KING, DEMANDANTE Y APELANTE, *v.* FERNÁNDEZ ET AL., DEMANDADOS Y APELADOS.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre reivindicación y daños y perjuicios.

No. 2514.—Resuelto en mayo 31, 1922.

REIVINDICACIÓN—DOBLE VENTA DE BIENES INMUEBLES—PROPIEDAD DE LA COSA OBJETO DE DOBLE VENTA.—Probado que las ventas del bien inmueble de que se trata hechas a las personas de quienes trae causa el demandante se verificaron en 1904 y 1906 inscribiéndose en 1905 y 1906 y que la misma cosa se traspasó en 1914 a la persona de quien traen causa los demandados habiendo sido inscrita en dicho año, es necesario concluir que la propiedad corresponde al demandante.

ID.—ID.—TERCERO.—No puede un tercero ampararse en el artículo 34 de la Ley Hipotecaria aunque hubiera adquirido de quien en el registro aparecía como dueño y hubiera inscrito su título, cuando éste se anula a virtud de otro anteriormente inscrito en el mismo registro.

ID.—ID.—DAÑOS Y PERJUICIOS.—No demostrándose que los demandados en este caso ni sus causantes ocuparan con mala fe la finca objeto de la doble venta, no procede la condena de daños y perjuicios contra ellos.

ID.—ID.—EDIFICACIÓN EN SUELO AJENO.—Probado que la casa enclavada sobre el

solar objeto de la doble venta fué construída por quien de buena fe creía que era dueño de la tierra sobre la cual edificaba, el caso debe regularse por lo prescrito en el artículo 370 del Código Civil.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. H. G. Molina.*

Abogado de los apelados: *Sr. M. M. Ginorio.*

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del tribunal.

La presente es un pleito sobre reivindicación, daños y perjuicios y nulidad de título. El demandante alegó que era dueño de determinadas tierras situadas en Santurce, San Juan, P. R., y que dentro de ellas los demandados ocupaban, sin título válido, un solar de doscientos setenta metros cuadrados de superficie. Los demandados alegaron que ocupaban en efecto el solar indicado pero no sin título, sino a. virtud de compra, y que dicho solar no estaba comprendido dentro de los terrenos del demandante. Fué el pleito a juicio y la corte, finalmente, lo resolvió en contra del demandante, quien interpuso entonces el presente recurso de apelación.

¿Está o no comprendido el solar ocupado por los demandados dentro de las tierras del demandante? Esta es la primera cuestión que debe estudiarse y resolverse.

No hay conflicto en cuanto a cuáles son los títulos que ambas partes ostentan y en cuanto a su origen. Las tierras de que se trata valían muy poco en el pasado. Luego, a virtud del crecimiento de la ciudad, fueron aumentando de valor. Antiguamente constituían parte de una finca rústica. Hoy se han ido fraccionando y se destinan a la fabricación de casas.

Veamos primero cuáles son las tierras del demandante, su título y origen.

El demandante alega ser y según el registro es dueño de dos porciones de terreno que se describen así:

"(a) URBANA: Solar radicado en el barrio de Santurce, sitio del

'Machuchal' de esta ciudad, compuesto de 47 metros 70 centímetros por el norte colindando con el mar; 92 metros por el sur, con una calle; 160 metros por el este colindando con Ceferino del Valle; y 131 metros cincuenta centímetros con una calle y don Libertad Torres Grau, o sea al oeste. (Inscrita al folio 143 vuelto, tomo 61 de San Juan, finca No. 2599, inscripción segunda.)

"(b) Finca urbana o solar en el barrio de Santurce sitio del 'Machuchal' de esta ciudad, compuesto de 20 metros de frente por 30 de fondo, o sean 600 metros cuadrados, colindante por el norte con el mar, por el sur y este con la Sociedad Margarida y Compañía, y por el oeste con una calle abierta por dicha sociedad en la misma finca. (Inscrita al folio 66 del tomo 38 de San Juan, finca No. 2465, inscripción tercera)."

Ambas fincas fueron adquiridas por el demandante King de los herederos de Charles A. Catlin por compra hecha constar en escritura pública otorgada el 22 de diciembre de 1917, inscrita en el registro.

La finca letra (a) fué segregada por su dueño Margarida y Compañía de la finca No. 2109 inscrita al folio 191 del tomo 49 del Municipio de San Juan, Registro de la Propiedad de San Juan, y vendida a Catlin el 15 de febrero de 1906, por escritura pública que se inscribió, como inscripción primera de una finca independiente, el 23 de abril de 1906.

La finca No. 2109, de diez cuerdas de terreno, se formó a su vez por segregación de otra mayor y fué adquirida por Margarida y Compañía por compra a Raimundo Palacios. Su inscripción primera como finca independiente data de Octubre 14, 1902.

La finca letra (b) fué vendida por Libertad Torres Grau a Catlin por escritura pública otorgada el 28 de febrero de 1905 e inscrita, como inscripción segunda de la finca, en el registro el 2 de abril de 1906. Torres Grau la adquirió a su vez, por compra, de Margarida y Cía., el 31 de agosto de 1904, habiéndola segregado Margarida y Cía. de su finca No. 2109. La inscripción a favor de Torres Grau es la primera de la finca independiente y se hizo el 12 de julio de 1905.

Veamos ahora cuál es el título, y su origen, de los demandados.

La demandada Francisca Fernández, esposa del otro demandado Pedro Bolívar, adquirió, por compra, de Ramona Aragunde, un solar, con una casa edificada en el mismo, que se describe así:

"Finca Urbana o solar con casa, sitas en el sitio 'Machuchal' sección norte del barrio de Santurce de esta ciudad, siendo la casa terrera de maderas y cobijadas de hierro galvanizado, y el solar mide 10 metros de frente al norte en colindancia con una calle abierta colindando con el mar; 17 metros por el fondo, sur, colindando con don Charles A. Catlin; 20 metros por el este en lindes con solar de doña Concepción Tudela y 20 metros por el oeste en lindes con una calle abierta en terrenos de Margarida & Cía.; dando esas medidas una superficie de 270 metros cuadrados."

La escritura de venta se otorgó el 26 de enero de 1917 y se inscribió, como inscripción segunda de la finca independiente, el 18 de abril de 1917.

La vendedora Aragunde adquirió el solar, por compra, de Anastasio Quiñones, inscribiéndose su título como inscripción primera el 2 de abril de 1916. Se describe el solar lo mismo que en la inscripción segunda, pero no se hace constar que exista en él casa alguna.

El vendedor Quiñones segregó el solar de otro de mayor extensión que adquirió, por compra, de Margarida y Cía., el 1°. de julio de 1914 y que se describe así:

"URBANA: Solar que radica en el sitio de 'Machuchal' sección norte del barrio de Santurce de esta ciudad, compuesto de 1587 metros 50 centímetros cuadrados, en colindancia por el norte en 60 metros con Margarida & Co.; por el sur en 65 metros con Charles A. Catlin; por el este en 30 metros con Henry W. Dooley, y por el oeste en 20 metros con Margarida & Co."

La inscripción a favor de Quiñones tiene fecha julio 20, 1914, y el vendedor Margarida y Cía. segregó el solar ven-

dídole de la finca No. 2109, de diez cuerdas, a que nos referimos al trazar la historia del título del demandante.

Muestra, pues, el registro, sin lugar a dudas de ningún género que las dos porciones de terreno del demandante y el solar de los demandados figuran inscritos como tres fincas independientes y que ahondando en su origen las tres formaron parte de una sola finca, la 2109, de diez cuerdas, perteneciente a un solo dueño, Margarida y Cía.

A primera vista, no resulta conflicto del registro. El dueño de una finca tiene derecho a segregar porciones de ella y a venderlas. Las porciones segregadas se convierten en fincas independientes y como tales se inscriben. Generalmente lo que hace el registrador es llevar nota de las superficies vendidas. Este método, suficiente en el mayor número de los casos, es deficiente cuando se trata de dividir una gran finca en solares. Sin la ayuda de un plano, es muy difícil formar entonces un juicio exacto de la situación de cada solar. En el presente caso las notas de las superficies vendidas no demostraban que los terrenos de la finca principal se hubieran agotado y el registrador fué inscribiendo las segregaciones sin reparo alguno. Y así las segregaciones de las fincas pertenecientes hoy al demandante se inscribieron desde 1905 y 1906 y la de la finca perteneciente a los demandados desde 1914.

Pero el demandante sostiene que la realidad de las cosas es que dentro de sus fincas está la ocupada por los demandados; que cuando Margarida y Cía. en 1914 vendió a Quiñones los 1587 metros 50 centímetros de los cuales se segregaron los 270 poseídos en la actualidad por los demandados, ya había vendido esos mismos 1587 metros 50 centímetros, en 1904 y 1906, a los causantes del demandante y que el conflicto existente debe resolverse de acuerdo con las reglas fijadas en la ley para los casos de doble venta.

El juez sentenciador refiriéndose a la prueba practicada durante el juicio dijo: "la corte ha llegado a la conclusión

de que el solar de la demandada no se encuentra enclavado dentro de los límites del solar del demandante.''

Si esa conclusión fuera correcta, la resolución del caso sería sencillísima, pero un estudio detenido de las alegaciones y las pruebas, nos lleva a una conclusión contraria y la solución del problema se complica.

Es un hecho que no puede negarse que los solares segregados por Margarida y Cía. de su finca No. 2109 y vendidos uno en 1904 a Torres Grau y otro en 1906 a Catlin, solares que hoy pertenecen al demandante, colindaban, en la descripción que se dió de ellos al segregarlos y venderlos y al inscribir las ventas en el registro, con el mar.

Es otro hecho que tampoco puede negarse que si se deja subsistente la sentencia apelada, las tierras del demandante perderían por completo su colindancia con el mar. La colindancia norte sería entonces con las tierras vendidas a Quiñones de las cuales se segregó la porción ocupada por los demandados. Quizás sería conveniente hacer constar aquí que parece que existen otros pleitos pendientes con los poseedores de todas las tierras vendidas a Quiñones.

Y es, por último, otro hecho que tampoco puede negarse, que para reconocer a las tierras del demandante su colindancia norte con el mar, es necesario incluir dentro de ellas las tierras vendidas por Margarida y Cía. a Quiñones en 1914. Cuando hablamos de colindancia con el mar, claro es que debe entenderse con la zona marítima.

Si esto es así, si esto resulta tan claro de los autos ¿cómo es posible explicar la sentencia recurrida? Se explica por la siguiente circunstancia. Al fijarse la colindancia sur de la finca mayor del demandante, o sea de la vendida por Margarida y Cía. a Catlin en 1906, se expresó que lo era con una calle y no solo se determinaron las colindancias por los puntos cardinales sino que se fijó la extensión de cada colindancia. Y así, comenzando a medir las tierras del demandante a partir de la dicha calle, es necesario también reconocer que

es un hecho cierto y admitido que si se da a las colindancias la exacta extensión que marca el título, y se agrega a la finca mayor la menor con ella colindante, o sea la vendida por Margarida y Cía. a Torres Grau en 1904, las tierras del demandante no llegarían al mar, quedando entre ellas y el mar espacio suficiente para situar las tierras vendidas por Margarida y Cía. a Quiñones en 1914. La corte parece que estimó que el problema se resolvía en justicia reconociendo al demandante la superficie indicada por sus títulos, aunque se le privara de su colindancia con el mar, y dictó la sentencia de que se deja hecho mérito.

¿Pudo adoptarse por la corte tal criterio? A nuestro juicio no pudo. Veamos lo que dice el Código Civil. Es así:

"Artículo 1372.—La obligación de entregar la cosa vendida comprende la de poner en poder del comprador todo lo que exprese el contrato, mediante las reglas siguientes:

"Si la venta de bienes inmuebles se hubiese hecho con expresión de su cabida, a razón de un precio por unidad de medida o número, tendrá obligación el vendedor de entregar al comprador, si éste lo exige, todo cuanto se haya expresado en el contrato; pero si esto no fuere posible, podrá el comprador optar entre una rebaja proporcional del precio, o la rescisión del contrato, siempre que en este último caso, no baje de la décima parte de la cabida la disminución de la que se le atribuyera al inmueble.

"Lo mismo se hará aunque resulte igual cabida, si alguna parte de ella no es de la calidad expresada en el contrato.

"La rescisión, en este caso, sólo tendrá lugar a voluntad del comprador, cuando el menor valor de la cosa vendida exceda de la décima parte del precio convenido."

"Artículo 1373.—Si en el caso del artículo precedente, resultare mayor cabida o número en el inmueble que los expresados en el contrato, el comprador tendrá la obligación de pagar el exceso de precio si la mayor cabida o número no pasa de la vigésima parte de los señalados en el mismo contrato; pero si excediere de dicha vigésima parte, el comprador podrá optar entre satisfacer el mayor valor del inmueble, o desistir del contrato."

"Artículo 1374.—En la venta de un inmueble, hecha por precio alzado y no a razón de un tanto por unidad de medida o número,

no tendrá lugar el aumento o disminución del mismo, aunque resulte mayor o menor cabida o número de los expresados en el contrato.

"Esto mismo tendrá lugar cuando sean dos o más fincas las vendidas por un sólo precio; pero si además de expresarse los linderos, indispensables en toda enajenación de inmuebles, se designaren en el contrato su cabida o número, el vendedor estará obligado a entregar todo lo que se comprenda dentro de los mismos linderos, aún cuando exceda de la cabida o número expresados en el contrato; y si no pudiere, sufrirá una disminución en el precio proporcional a lo que falte de cabida o número, a no ser que el contrato quede anulado por no conformarse el comprador con que se deje de entregar lo que se estipuló."

"Artículo 1375.—Las acciones que nacen de los tres artículos anteriores prescribirán a los seis meses, contados desde el día de la entrega."

Parece que las ventas de Margarida y Cía. a Torres Grau y a Catlin lo fueron por precio alzado, pero de la certificación del registro presentada como prueba, no puede llegarse a una conclusión exacta sobre el particular. Lo que sí resulta evidente de la certificación, de los títulos y de las declaraciones de testigos y peritos, es que desde el primer momento se fijó a ambas fincas su colindancia norte con el mar. Basta el simple otorgamiento de la escritura para que el comprador se entienda puesto en posesión de la finca que adquiriera. En tal virtud debe entenderse que Torres Grau y Catlin fueron puestos en posesión de las fincas de que se trata por Margarida y Cía., desde 1904 y 1906, respectivamente. Pero hay además en los autos una declaración que es conveniente transcribir para formar un claro concepto de la realidad de las cosas. Nos referimos a la del testigo H. W. Dooley, que, en parte, se expresó así:

"Que tuvo amistad con Catlin y le·habló a él con respecto a la venta de los terrenos porque estaba interesado en comprarlos, pero en eso el Sr. Catlin se embarcó para los Estados Unidos y falleció. Luego habló con su hermano que deseaba vender los terrenos y estaba tratando con él la compra-venta cuando él también murió. En el año 1915, empecé a tratar con ellos otra vez para la compra de

la finca. Primeramente la finca tenía una cerca de alambre, después cuando Catlin estaba fuera casi estaba abandonada porque Mr. Catlin no ha tenido representante alguno aquí en el país. Al fin del año 14 o al principio del 15, en diciembre o enero, yo noté algunos estacones puestos ahí, llevaron un carro de estacones, no estaban puestos en la tierra; estaban solamente echados ahí, 25 ó 30. Yo ví a don Juan Margarida ahí durante cuatro o cinco semanas. Un día yo le encontré allí con don Paco Torres. Fué al principio de febrero, porque escribí al abogado de la Sucesión de Mr. Catlin el día 17 de febrero del año 15. Aquel día Margarida no dijo nada, pero don Paco Torres me dijo que él estaba comprando una parcela de terreno allí de Margarida. Me enseñaron el sitio donde hoy está la casa de Bolívar. Yo le dije que Margarida no tenía ningún derecho de vender ese terreno ya vendido a Catlin y yo estaba tratando con él sobre la compra de la finca. En aquella misma época, en el año 14, yo estaba haciendo un paseo de la finca de "King's Court" a la finca de del Valle.''

Se ve, pues, que Margarida y Cía. estaba en la obligación de entregar y entregó a Catlin lo que le había vendido de acuerdo con los linderos. La venta de Torres Grau a Catlin se efectuó en 1905 y las dos fincas unidas forman una manzana que está en armonía con las otras que se observan en el plano general que se presentó de la urbanización de aquellos lugares. La pequeña finca procedente de Torres Grau es de gran importancia para completar la manzana, precisamente por su colindancia con el mar.

Si Margarida y Cía. después de haber vendido a Torres Grau y a Catlin, se convenció de que Catlin tenía dentro de sus linderos mayor superficie que la que indicaban sus títulos, debió haber actuado de acuerdo con los preceptos que dejamos transcritos del Código Civil, pero nunca pudo, válidamente, después de transcurridos unos ocho años, por sí mismo, emplazar los metros que indicaban los títulos de Catlin comenzando la mensura por la calle del sur, arrebatarle la colindancia norte con el mar y vender el exceso resultante a otra persona. Y eso fué lo que, según la prueba practicada, hizo Margarida y Cía. Claro es que esta declaración se hace

únicamente a los fines de este pleito. Margarida y Cía. no ha sido parte en el mismo y por lo tanto no puede perjudicarle.

Siendo todo ello así, es necesario concluir que se trata de un verdadero caso de doble venta que debe resolverse de acuerdo con las reglas fijadas por el mismo legislador, a saber:

"Artículo 1376.—Si una misma cosa se hubiese vendido a diferentes compradores, la propiedad se transferirá a la persona que primero haya tomado posesión de ella con buena fe, si fuere mueble.

"Si fuere inmueble, la propiedad pertenecerá al adquirente que antes la haya inscrito en el registro.

"Cuando no haya inscripción, pertenecerá la propiedad a quien de buena fe sea primero en la posesión; y faltando ésta, a quien presente título de fecha más antigua, siempre que haya buena fe."

Y como resulta que las ventas a Torres Grau y a Catlin, de quienes trae causa el demandante, se verificaron en 1904 y 1906 y están inscritas desde 1905 y 1906, y la misma cosa se vendió a Quiñones, de quien traen causa los demandados, en 1914, y en ese año se inscribió, es necesario concluir que habiendo sido el título del demandante primeramente inscrito en el registro, y a mayor abundamiento primeramente otorgado, el conflicto, de acuerdo con la ley y la justicia, debe en su favor resolverse.

Pero los demandados alegan que tienen la condición de terceros e invocan el artículo 34 de la Ley Hipotecaria y la decisión de esta corte en el caso de *Ayllón y Ojeda* v. *González y Fernández*, 28 D. P. R. 67.

El caso de Ayllón se refería a una situación legal distinta y en cuanto al artículo 34 de la Ley Hipotecaria, los propios términos en que aparece redactado demuestran que en vez de favorecer perjudica a los demandados.

El artículo 33 de la indicada ley consagra el principio de que la inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes, y el 34 limita el alcance

del principio, disponiendo que ''los actos o contratos que se ejecuten u otorguen por persona que en el registro aparezca con derecho para ello no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante a virtud de título anterior *no inscrito* o de causas que no resulten claramente del mismo registro.'' Las itálicas son nuestras.

Puede aceptarse que los demandados son terceros, puede aceptarse que adquirieron de quien en el registro aparecía como dueño (Ramona Aragunde), pero como su título se anula a virtud de títulos anteriores (Torres Grau y Catlin) que estaban inscritos en el registro, queda en pie en toda su integridad el principio del artículo 33. La venta de Margarida y Cía. a Quiñones fué nula. No pudo trasmitir por ella una propiedad que ya había vendido y que el comprador había inscrito en el registro. La buena fe de Quiñones, de Ramona Aragunde y de los demandados y la inscripción de sus títulos en el registro, no son suficientes. Lo hubieran sido solamente a virtud de una disposición especial de la ley, artículo 1376 del Código Civil, si Torres Grau y Catlin hubieran dejado de inscribir sus títulos o los hubieran inscrito después del de Quiñones. No hay envuelta en este caso cuestión de prescripción alguna.

Algo se insinuó en el acto de la vista con respecto a que el demandante al adquirir en 1917 conocía la situación de hecho creada por virtud de la doble venta de Margarida y Cía. a Quiñones en 1914. Nada influye tal conocimiento. Aceptando que lo tuviera, a la única conclusión a que podría llegarse es a la de que el demandante al comprar a los herederos de Catlin asumió el riesgo de perder parte de las tierras, pero a virtud de la compra en las condiciones que ésta se hizo, esto es, trasmitiendo el vendedor todos sus derechos y acciones, el demandante quedó colocado en el mismo lugar de Catlin.

Veamos ahora la cuestión de daños y perjuicios. Se alegó

en la demanda que la posesión de los demandados era de mala fe y que había causado al demandante perjuicios por valor de mil dólares. En el acto de la vista se trató de probar que el uso del terreno valía y que por la ocupación del solar se había obstaculizado la urbanización, fijándose la cuantía de los perjuicios en la dicha suma de mil dólares.

Nada hay en los autos que demuestre la mala fe actual de Quiñones, ni de la Aragunde, ni de los demandados. Aparentemente ellos actuaron de buena fe y sufrirán por la decisión de este pleito todos o alguno o algunos de ellos verdaderos perjuicios. Siendo esto así, creemos que la verdadera justicia en este caso consiste en resolver que la tierra ocupada por los demandados pertenece al démandante y ordenar su entrega y nada más.

Hay, por último, algo que no puede pasar desapercibido a esta corte y es la casa levantada en el solar ocupado por los demandados. Dicha casa no fué construída por Catlin. Lo fué por quien de buena fe creía que era dueño de la tierra sobre la cual edificaba. Siendo ello así el caso debe regularse por lo prescrito en el artículo 370 del Código Civil, a saber:

"Artículo 370.—El dueño del terreno en que se edificare, sembrare o plantare de buena fe, tendrá derecho a hacer suya la obra, siembra o plantación, previa la indemnización establecida en los artículos 455 y 456 del Capítulo III, Título V, o a obligar al que fabricó o plantó, a pagar el precio del terreno, y al que sembró, la renta correspondiente."

Véase el caso de *El Pueblo* v. *Municipio de San Juan*, 19 D. P. R. 656, 667.

Por virtud de todo lo expuesto debe revocarse la sentencia apelada y dictarse otra declarando que el solar ocupado por los demandados pertenece al demandante, que el título de los demandados a dicho solar es nulo, que no ha lugar a la condena de daños y perjuicios y que la situación de la casa se regulará por lo dispuesto en el artículo 370 del Có-

digo Civil quedando el pleito abierto en cuanto a este extremo en la corte de distrito. ·

*Revocada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf, Aldrey y Hutchison.

El Juez Asociado Sr. Franco Soto no intervino en la vista de este caso.

RESOLUCIÓN SOBRE RECONSIDERACIÓN DE·JUNIO 20, 1922.

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del tribunal.

El demandante y apelante solicita la reconsideración de la sentencia de esta corte pronunciada el 31 de mayo último, alegando que este tribunal erró: 1, al resolver que la posesión de los demandados era de buena fe; 2, al aplicar el artículo 370 del Código Civil, y 3, al no imponer las costas a los demandados.

1. A virtud de un examen cuidadoso de los hechos y la ley el tribunal concluyó que no se había demostrado la mala fe de los demandados. Insiste el apelante en la declaración del testigo Dooley. Según el propio Dooley su conversación con Margarida y Paco Torres, esposo y apoderado de la Aragunde, fué a principios de febrero del año 15. Según las escrituras públicas y el registro, Margarida vendió a Quiñones el 1º. de julio de 1914, quedando inscrita la venta en julio 20, 1914. Quiere decir que a la fecha de la advertencia de Dooley ya los terrenos habían sido vendidos por Margarida a Quiñones y éste había inscrito su título sin dificultad en el registro. La esposa de Torres no compró de Margarida sino de Quiñones y aún en cuanto a ella sería muy dudoso que las palabras de Dooley pudieran tener el efecto de destruir su buena fe. Pero ni Margarida, ni Quiñones, ni la Aragunde han sido demandados en este pleito. Con respecto a la buena fe de la Sra. Fernández, la verdadera demandada, no hay la más leve duda.

Como cuestión de hecho el tribunal estimó que no se probó la mala fe de la parte demandada.   No cabe reconsiderara la sentencia por el primer error alegado.

2. Tampoco por el segundo.   Todo el derecho que tiene, se le ha reconocido al demandante.   La casa fué fabricada por una persona que compró el terreno de quien aparecía como dueño en el registro y a quien creyó dueño.   Para esos casos es que el legislador puso en vigor précisamente el artículo 370 del Código Civil.

3. La cuestión de costas es discrecional y el tribunal sigue creyendo que hizo buen uso de su discreción, no obstante las manifestaciones que contiene la moción de reconsideración. No fueron los demandados temerarios al defenderse en este caso.   La cuestión envuelta no era clara.   La corte de distrito creyó que debía resolverse en favor de los demandados.

Por virtud de todo lo expuesto, debe negarse la reconsideración solicitada.

*Denegada.*

Jueces concurrentes: Sres. Asociados Wolf, Aldrey, Hutchison y Franco Soto.