ROQUE, DOMINGO JUAN y MARÍA MERCEDES PÉREZ CRUZ, ETC., demandantes y recurridos, *v.* MANUEL FERNÁNDEZ MARTÍNEZ ET AL. y LITHEDA APARTMENTS, INC., demandados y recurrentes.

*Número:* R-67-215 *Resuelto:* 8 de mayo de 1973

366

366

*José Antonio Luiña,* abogado de Litheda Apartments, Inc.; *Adolfo Astacio* y *Harry Llenza,* abogados de Manuel Fernández Martínez; *A. J. Amadeo Murga, Rafael Benet, Héctor G. Oliveras* y *Rodolfo Gluck,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

En el año 1900 don Domingo Pérez Provecho compró a don Clemente Castro la finca inmatriculada en el Registro de la Propiedad, Sección de Río Piedras, con el número 471. Al morir don Domingo, 31 años después, ésta pasó a su sucesión, compuesta por los demandantes, aquí recurridos. Don Manuel Fernández Martínez embargó dicha finca al instar acción en cobro de dinero contra la sucesión por una deuda que había contraído don Domingo. Adquirió el inmueble mediante adjudicación en venta judicial en 1933. Posteriormente traspasó la finca a don Antonio Mongil Portell. Ni la venta judicial, ni la venta a Mongil se inscribieron.

El 23 de abril de 1947, los herederos de don Domingo Pérez Provecho y Juana Cruz, su viuda, demandaron a Manuel Fernández Martínez. Sostuvieron que la venta judicial realizada en 1933 fué nula. Se alegó otra causa de acción para reivindicar el inmueble. El 13 de septiembre de 1948 se incluyó como codemandado a Antonio Mongil Portell. En 1961 a Litheda Apartments, Inc., alegando que es la actual poseedora de la finca.

En su "Contestación a Demanda Enmendada" Litheda alegó afirmativamente que nunca había estado en posesión de la finca. Sin embargo su abogado no contestó un requerimiento de admisión que le sometieran los demandantes el 1ro. de noviembre de 1961 a los efectos de que la finca poseída por Litheda era la misma número 471 a que nos hemos referido antes. No sólo no lo contestó, implícitamente admitiendo en esa forma la veracidad del hecho, [1] sino que se fundó en esa admisión para presentar moción de "sentencia sumaria y/o para desestimar" amparándose en la protección que le brinda a su cliente la Ley Hipotecaria como tercero registral. A ese efecto alegó:

---

[1] Dispone la Regla 33.1 de las de Procedimiento Civil de 1958:

"Después de iniciarse un pleito, una parte podrá requerir por escrito a cualquier otra parte que admita la autenticidad de cualesquiera documentos pertinentes descritos en y producidos con el requerimiento, o que admita la

"Que la finca que se intenta y desea reivindicar por los demandantes es la referida, y que no hay disputa alguna en cuanto al hecho de que [es]ésta y no otra la que se intenta reivindicar por los demandantes, aparece claramente del "RE-QUERIMIENTO DE ADMISION A LA PARTE DEMAN-DADA LITHEDA APARTMENTS CORPORATION', sometido por los demandantes a la demandada compareciente el día 1ro. de noviembre de 1961, obrante en los autos de este caso, y foto-copia de la cual se acompaña a y hace formar parte de esta Moción como 'EXHIBIT A' de la misma."

La finca 471 aparece descrita en el Registro de la Propiedad de la siguiente forma:

"Rústica: Terreno en el Barrio de 'Cupey' de la jurisdicción de Río Piedras compuesto de diez y ocho cuerdas equivalentes a siete hectáreas, siete áreas, cuarenta centiáreas; colindante por el Este y Oeste con Manuel Zavala, por el Norte con la que-brada denominada Guadalcanar [sic] y por el Sud con Rafaela Castro." (2)

---

veracidad de cualesquiera hechos pertinentes expuestos en el requerimiento. Si un demandante desea notificar un requerimiento de admisión dentro de 10 días después de iniciarse el pleito, será necesario obtener permiso del tribunal, el cual podrá ser concedido con o sin notificación a la parte contraria. Se notificarán copias de los documentos juntamente con el requerimiento a menos que hubieren sido ya suministradas. Todas las cuestiones sobre las cuales se solicite una admisión se tendrán por admiti-das, a menos que dentro de un plazo designado en el requerimiento, que no será menor de 10 días después de su notificación, o dentro del plazo menor o mayor que el tribunal concediere mediante moción y notificación, la parte a quien va dirigido el requerimiento notifique y entregue a la parte que requiere la admisión, ya sea (1) una declaración jurada negando específicamente las cuestiones sobre las cuales se requiere una admisión, o expresando detalladamente las razones por las cuales dicha parte no puede, ajustándose a la verdad, ni admitir ni negar dichas cuestiones; ó (2) objeciones por escrito fundadas en que algunas o todas las admisiones pedidas son privilegiadas o inmateriales o que el requerimiento es impro-cedente total o parcialmente por cualquier otro fundamento, conjuntamente con una notificación de una vista sobre dichas objeciones en la fecha más próxima factible. . . ."

(2) Certificación relativa a la finca número 471 inscrita al folio 147 del tomo 9 de Río Piedras. Expedida en 20 de febrero de 1962 a instancia de Antonio J. Amadeo.

En virtud de dos segregaciones de .47 y .956 de cuerda, la finca quedó reducida a 16.574 cuerdas.

La finca propiedad de Litheda lleva el número 20,822 y se describe como sigue:

"Urbana:—Parcela de terreno de forma irregular, radicada en el Barrio Cupey, sitio denominado Río Piedras, término Municipal del Gobierno de la Capital de Puerto Rico, con una cabida de quince cuerdas con dos mil setecientos setenta diez milésimas de otra, equivalentes a seis hectáreas, cero áreas, y cuarenta y cuatro centiáreas, con cuatro mil seiscientos setenta y una diez milésimas de centiárea, y con las siguientes colindancias [:] por el Norte, con El Cerrito Corporation; por el Sur, con el señor Bernardo Mongil; por el Este, con la Carretera Número Ochocientos Cuarenta y Cinco, con terrenos de Seín Enterprises, Inc., y con la finca principal de la cual se segrega; y por el Oeste, con la Carretera Estatal número Ochocientos Cuarenta y Cuatro (Carretera de Cupey) y con la finca principal de la cual se segrega." [3]

Ya hemos relatado brevemente la historia de la finca 471 que se intenta reivindicar. Procederemos a hacer lo mismo con la 20,822 perteneciente a la codemandada Litheda.

En 1938 la sucesión de don Ezequiel Mongil (padre de don Antonio Mongil Portell), agrupó las fincas número 574 (de 193 cuerdas), 2564 (8 cuerdas y un cuadro), 1763 (44.5 cuerdas), 483 (135 cuerdas), 2823 (57.968 cuerdas) y 412 (30 cuerdas) para formar la número 6,206, nueva finca con cabida total de 410.48 cuerdas. [4] Entre las fincas agrupadas no está la número 471.

[3] Certificación relativa a la finca número 20,822 inscrita al folio 155 y 156 del tomo 724 de Río Piedras. Expedida en 11 de mayo de 1964 a instancia del Lcdo. José Antonio Luiña.

[4] La suma de las áreas de las fincas agrupadas es de 468.468 cuerdas y un cuadro. En vista sobre la moción de sentencia sumaria celebrada el 27 de agosto de 1965 ante el Hon. Alfonso García Martínez el Lic. Alvaro Calderón manifestó: "Como cuestión de realidad, luego de la mensura que hicieron al agruparse las seis fincas, la suma dio menos que la supuesta que tiene. . . ." (Transcripción de Evidencia, págs. 12 y 13.) La Certificación del Registrador de la Propiedad relativa a dicha finca inscrita al folio 83 del tomo 126 de Río Piedras y expedida en 14 de mayo de 1964 a instancia del Lcdo. José Antonio Luiña establece que se compone de 410.48 cuerdas.

Es pertinente aclarar que en el hecho quinto de la escritura de agrupación, Antonio Mongil Portell y su esposa declararon que cedían a la sucesión de don Ezequiel todo bien que se encontrara dentro de un plano mencionado en el mismo escrito. Pero Antonio Mongil nunca obtuvo título de propiedad sobre la 471 ya que se declaró nula la venta judicial por la cual adquirió su vendedor. Tampoco quedó protegido por el Registro ya que ni inscribió ni adquirió de quien tenía inscrito. De todas formas, aunque se hubiera "cedido" derecho sobre la finca, de ningún sitio surge que ésta se agrupara a las demás.

La nueva finca resultante de la agrupación realizada por la Sucn. de Ezequiel Mongil sufre una serie de segregaciones y lotificaciones.

En 1938 se segrega la finca número 6,212 con cabida de 206.67 cuerdas que pasa a manos de Carmen Portell, viuda de don Ezequiel.

Antonio Mongill Portell adquiere de sus hermanos sus porciones del remanente en 1943 para luego venderlo a su madre doña Carmen, en 1944. Doña Carmen no re-agrupa las fincas, sino que por el contrario segrega la finca 7,555 de 44.834 cuerdas y la traspasa a su hija, Carmen Amalia Mongil Portell; además segrega la número 7,556 de 64.6923 cuerdas y la traspasa a Antonio. La 6,206 queda así reducida a 94.2836 cuerdas.

El remanente lo vende a otros dos hijos: Luis y Bernardo. Estos segregan otro pedazo de terreno de 40 cuerdas y el remanente lo dividen en tres parcelas denominadas "a" (36 cuerdas), "b" (7 cuerdas) y "c" (11 cuerdas). Bernardo entonces adquiere la parte de su hermano.

La parcela "a" es vendida en 1960 a El Lago Development Corp. que segrega de ella la finca número 20,751 (1.6243 cuerdas) y la re-vende a Bernardo. Segrega además la finca 20,764 de 1.6243 metros cuadrados (alrededor de .0004 cuerdas).

El Lago era dueña de la finca número 20,765 de 1,652.71 mts.² (.4349 cuerdas), así que la agrupa a la 6,206 para constituir la número 20,766 que según la determinación de hecho número 9 (f) tenía un área de 28.80961 cuerdas.

Continuamos el relato con el historial de la 20,766 que pertenece a El Lago Corp. hasta 1960 cuando la vende a Jefferson Caribe, Inc., dividida en predios "A" (18 cuerdas) y "B" (2.7230 cuerdas).

Jefferson Caribe segrega la finca número 20,822 de 15.2770 cuerdas y la vende a Litheda Apartments, Inc.

Salta a la vista que la historia registral de cada una de las fincas es completamente diferente y así lo concluyó el tribunal de instancia.

Los demandantes, ante la petición de sentencia sumaria de Litheda, radicaron solicitud de sentencia sumaria a su favor fundándose, en que la finca de Litheda era la misma que se trataba de reivindicar, que Litheda no era tercero, y que si lo era, no le protegía el Registro por existir una doble inmatriculación.

■ En su moción de sentencia sumaria la demandada Litheda alegó reunir todos los requisitos para merecer como tercero la protección registral contra cualquier nulidad que pareciera afectar su título dominical. El tribunal de instancia declaró con lugar la sentencia sumaria solicitada por los demandantes. Concluyó la certeza de la tercería registral de Litheda, (⁵) pero le negó la protección de la Ley Hipotecaria debido a que se trataba de un caso de doble inmatriculación en el Registro de la Propiedad y por tanto éste se inhibe, no extendiendo su protección al tercero. (⁶) Véanse: *Borrero* v.

(⁵) Determinación que nos negamos a revisar, R-67-202 (ver Resolución de 25 oct. 1967).

(⁶) La doble inmatriculación es un estado irregular que se produce a veces en el Registro de la Propiedad consistente en que una misma finca, por entero, o una misma finca y parte de otra, constan inmatriculadas dos o más veces. La doctrina y la jurisprudencia han resuelto el problema negándole a ambas la protección registral y determinando que la cuestión

*Borrero*, 32 D.P.R. 194 (1923); *Rivera* v. *The Juncos Central*, 31 D.P.R. 264 (1922); *King* v. *Fernández*, 30 D.P.R. 592 (1922); *Ramos* v. *Orcasitas*, 14 D.P.R. 68 (1908); Martínez Irizarry, *El Principio de la Fe Pública Registral en Puerto Rico*, XXVIII Rev. C. Abo. P.R. 754, 755 (1968); Sentencia del Tribunal Supremo de España del 17 de junio de 1963 (Núm. 3612); Roca Sastre, *Derecho Hipotecario* (6ta. ed., Barcelona: 1968), Casa Editorial Bosch, Tomo III, págs. 427 *et seq.*

Se expresó así el tribunal de instancia:

"Nos enfrentamos en este caso, en una jurisdicción en que no existe el catastro, con la inscripción dual de una misma finca a favor de distintas personas. Decimos una misma finca porque para los efectos de este pleito damos como ciertos los hechos contenidos en el requerimiento de admisión que mencionamos en nuestra Determinación de Hechos núm. 11."

El siguiente es el razonamiento utilizado por el tribunal:

a) Cuando dos inscripciones en el Registro se refieren a una misma finca surge un caso de doble inmatriculación.

b) Se ha aceptado que la inscripción número 471 y la 20,822 corresponden a la misma finca.

c) Por tanto, es éste un caso de doble inmatriculación.

■ El problema con la deducción anterior nace de la premisa segunda, ya que el origen de ésta lo constituye una

se adjudique a base de las reglas del derecho civil sin la protección de la Ley Hipotecaria. El Tribunal Supremo de España en Sentencia de 17 de junio de 1963, expone con precisión y claridad la norma:

"CDO: Que la doble inmatriculación de una finca o derecho real en el Registro de la Propiedad, supone una anomalía de tal magnitud en el funcionamiento de esta Oficina que hace quebrar los principios básicos de publicidad y legitimación sobre los que descansa nuestro sistema inmobiliario, ya que al coexistir dos asientos de igual rango y naturaleza, contradictorios e incompatibles entre sí, la protección que se dispensase a uno de sus titulares frente al otro, implicaría para éste el desconocimiento de los mismos principios rectores del mecanismo tabular, por lo que neutralizándose en tal supuesto los efectos de ambas inscripciones, habrá de acudirse para resolver la pugna o colisión entre ellas y determinar cual sea la prevalente, a las reglas del Derecho Civil con exclusión de la L. H. ..."

ficción legal cuya razón de ser obviamente no contempla un resultado como el obtenido en este caso.

Antes de entrar a considerar la cuestión planteada, precisa recordar una vez más lo establecido en la primera de las Reglas de Procedimiento Civil de 1958: "Estas reglas . . . [s]e interpretarán de modo que garanticen una solución justa, rápida y económica de todo procedimiento."

La Regla 33.1 dispone que las cuestiones sobre las cuales se solicite una admisión se tendrán por admitidas, a menos que se cumplan con ciertos requisitos que la regla enumera. ([7])

■ El objetivo perseguido con la regla de requerimiento de admisión es el eliminar del pleito todos los hechos que no estén en controversia para aligerar los procedimientos y tener una visión más nítida y precisa de lo que en realidad está en disputa. No se trata de un medio clásico de descubrimiento de prueba. Mucho menos de un instrumento para sorprender a la parte contraria o utilizarse como trampolín para lograr una sentencia sumaria poniendo en riesgo los derechos de los litigantes. Véase *Rosado* v. *Tribunal Superior*, 94 D.P.R. 122, 132–133 (1967), y los artículos ahí citados. Véase además el caso de *Pickens* v. *Equitable Life Assur. Soc.*, 413 F.2d 1390, 1393 (1969).

■ Expresan unos conocidos comentaristas de las Reglas Federales de Procedimiento al referirse a la número 36, correspondiente a la 33 nuestra:

"[E]n relación a esta regla, al igual que con las demás, no se permitirá que prevalezcan consideraciones técnicas en detrimento de la justicia sustancial, y por tanto la regla debe ser interpretada en forma liberal." Wright & Miller, *Federal Practice and Procedure: Civil* § 2252, pág. 705.

■ Definitivamente era un hecho en controversia la identificación de la finca en litigio. Que no procede una reivindicación a menos que se pueda identificar con exactitud y certeza

---

([7]) En el escolio 1 se copia la Regla 33.1.

el inmueble objeto de la acción, es doctrina vigente desde época tan remota como la de las Siete Partidas. El Rey Sabio proveyó:

"Campo, ó viña, ó casa ó otra cosa cualquier de aquellas que son llamadas raiz queriéndola alguno demandar en juicio por suya, debe decir señaladamente en qual logar es et nombrar los mojones et los linderos della." *Las Siete Partidas del Rey Don Alfonso el Sabio* (París: 1846), Librería Castellana, Tercera Partida, Título II, Ley XXV, Tomo 1ro., pág. 436.

▮ Hace más de sesenta años expusimos en *Amy et al.* v. *Amy et al.*, 15 D.P.R. 415, 434 (1909), los requisitos para reivindicar:

"(a) Que el reclamante y no otro sea el legítimo dueño de la cosa reclamada, (derecho de dominio);

(b) Que la cosa reclamada y no otra sea la que le pertenezca (identidad de la cosa); y (c) Que esa misma cosa se encuentre indebidamente en poder del demandado, (tenencia ó posesión)."

En 1938 elaboramos más la doctrina de la identidad al establecer en *Pueblo* v. *Rojas*, 53 D.P.R. 121, 125 (1938), que "[l]a identificación que se exige al demandante consiste de demostrar que *la finca que reclama es la misma a que se refieren los documentos que dicha parte presente en evidencia para acreditar su justo título de dominio* ... [citas omitidas, énfasis suplido]." Como se dijera en *Arce* v. *Díaz*, 77 D.P.R. 624, 629 (1954), es jurisprudencia muy repetida que ha de fijarse con precisión la situación, cabida y linderos del inmueble a reivindicarse, y demostrarse durante el juicio que el predio reclamado es aquel a que se refieren los documentos, títulos y demás medios de prueba en que el actor funde su pretensión. Véanse: *Castrillo* v. *Maldonado*, 95 D.P.R. 885, 891 (1968); *E.L.A.* v. *Pérez Valdivieso*, 83 D.P.R. 864, 877 (1961); *Velázquez* v. *Velázquez*, 82 D.P.R. 619 (1961); *Sevilla* v. *Cía. Azucarera del Toa*, 69 D.P.R. 249 (1948); *Gerardino* v. *Pueblo*, 55 D.P.R. 895 (1940); *Torres* v. *Capital de P.R.*, 54 D.P.R. 357 (1939); *Monje* v. *Osorio*, 42 D.P.R.

146 (1931); *Pérez Chanza* v. *Gerena*, 41 D.P.R. 105, 107 (1930); *Pesquera* v. *Fernández et al.*, 22 D.P.R. 53 (1915); *Díaz* v. *El Pueblo et al.*, 17 D.P.R. 60 (1911); *Sucesión Gorbea* v. *Pérez*, 10 D.P.R. 460 (1906); *Mouriño* v. *Carreras*, 2 D.P.R. 581, 587–588 (1902); Puig Brutau, *Fundamentos del Derecho Civil*, (2da. ed., Barcelona: 1971), Tomo III, Vol. I, págs. 176 *et seq.;* Manresa, *Comentarios al Código Civil Español* (7ma. ed, Madrid: 1952), Instituto Editorial Reus, Tomo III, págs. 199 *et seq.*

En *Matienzo* v. *Cancio et al.*, 23 D.P.R. 269 (1915), Anastacia Bultrón Sánchez traspasó al demandante Joaquín Matienzao una finca que se describe en la opinión. Sostenía el demandante que era esa la misma propiedad que había adquirido de sí el causante de la vendedora. Procedimos a describir esta segunda finca cuya descripción en nada se asemejaba a la anterior. A la pág. 274 expusimos que encontramos una completa falta de identificación en las dos fincas. Añadimos a la pág. 275 que "[c]omparando las dos descripciones no existe en absoluto semejanza alguna entre éllas. La segunda descripción se refiere a dos colindancias naturales, un camino vecinal y una quebrada. No consta nada en los autos que muestre cómo surgió una quebrada en el Oeste o un camino vecinal en el Sur de la finca descrita originalmente."

Y en *Ruiz* v. *Pacheco*, 8 D.P.R. 443, 447 (1905), expresamos:

"[S]i bien el demandante y apelante León Ruiz Arriola, ha presentado la escritura de compra-venta de los terrenos inscrita en el Registro de la Propiedad, lo que constituye á su favor un título de dominio de los terrenos comprendidos en dicho documento, ha dejado de probar su identidad, para venir en conocimiento de que realmente son los mismos de que está en posesión el demandado; prueba que por regla general es uno de los requisitos esenciales para que la acción reivindicatoria pueda prosperar, y que en el caso presente estaba tanto más indicada, cuanto que el demandado Alejandro Pacheco ha sostenido en la declaración jurada que presentó al solicitar la prórroga para contestar

la demanda, que son terrenos distintos, los que se le reclaman y los que él posee, y para corroborar este aserto, bastaría efectuar una inspección ocular y se vendría en conocimiento de que las colindancias que se describen en la demanda no concuerdan en nada con las de la estancia que él disfruta, y por consiguiente que son dos fincas diferentes."

Finalmente, la Regla 7.8 de las de Procedimiento Civil de 1958 establece que una alegación en que se reclame un derecho sobre un inmueble deberá describir el mismo con tal precisión que se pueda identificar. ([8])

Así, para poder prevalecer en última instancia, los demandantes en su acción reivindicatoria tienen que establecer la identidad del inmueble que interesan recuperar. Es evidente de la relación que hemos hecho que éste no es un caso común y corriente en el que el inmueble es de fácil identificación.

 Con esto presente es que debemos considerar la posición de la codemandada Litheda a los efectos de su admisión de que la finca que poseía era la misma que se intentaba reivindicar. Es evidente que al admitirlo, su propósito era lograr una adjudicación fácil y rápida de la controversia: la determinación de que era un tercero protegido registralmente. Y así lo determinó el tribunal de instancia. Pero como haberlo admitido tenía el efecto de establecer una doble inmatriculación del inmueble objeto del litigio, la condición de tercero no le protegía. Esto trae como resultado el adjudicar definitivamente, a base de una admisión táctica, un hecho esencial sobre el cual gira principalmente la litis; hecho que había sido negado en la contestación y que evidentemente fue admitido, como antes apuntamos, para lograr una rápida solución del caso. Conocida la historia de la finca 471 y sabiendo que uno de los requisitos esenciales en la acción reivindicatoria es la identificación del inmueble, resultaría

([8]) Así es el texto de la Regla 7.8:

"Una alegación en que se reclame un derecho sobre un inmueble deberá describir el inmueble con tal precisión que pueda ser identificado."

extremadamente injusto predicar en esta admisión aislada una sentencia que afecta principalmente a una parte que pierde la protección registral del tercero hipotecario por una norma jurisprudencial.

Los hechos particulares de este caso imparten a la admisión de Litheda un carácter de artificio legalista que no puede servir de base para una adjudicación racional y justa de la controversia.

El debido proceso de ley no tolera que una parte pueda desdecirse de lo admitido bajo cualquier liviano pretexto. Las admisiones bajo la Regla 33 son actos ejecutados con gran deliberación, análisis y estudio en el sosegado ambiente del despacho del abogado; no alcanzan la indulgencia que pudiera otorgarse a una admisión bajo fuerte interrogatorio en el ambiente tenso de la sala de justicia. No obstante un litigante debe tener derecho a retirar una admisión sólo si demuestra que incurrió en error honesto al hacerla y que dicho error derrota la justicia básica del caso. Después de todo las cortes existen para derribar obstáculos en el camino hacia lo justo.

Sólo mediando circunstancias excepcionales, como las aquí presentes, y más aun para rescatar la justicia de la confusión y el error de los que debemos servirla puede permitirse a una parte que retire una admisión bajo la Regla 33 de Procedimiento Civil o cualquier otra disposición, pues no puede privarse al sistema de enjuiciamiento de la más segura base de adjudicación correcta y justa como lo es la confesión de parte.

*Se revocará la sentencia sumaria parcial dictada por la Sala de San Juan del Tribunal Superior y se devolverá el caso para la continuación de los procedimientos.*

El Juez Asociado, Señor Martín, no intervino.