Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| GILBERTO JOSÉ ALVARADO DÍAZ<br><br>*Apelado*<br><br>v.<br><br>KÉFRUITS LLC<br><br>*Co-demandada*<br><br>*AUTORIDAD DE TIERRAS DE PUERTO RICO*<br><br>*Apelante* | KLAN202300725 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.:<br>SG2019CV00229<br>(Salón 307)<br><br>Sobre:<br>Interdicto Posesorio |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de febrero de 2024.

Comparece la Autoridad de Tierras de Puerto Rico (ATPR o parte apelante) mediante recurso de *Apelación* y nos solicita que revoquemos la *Sentencia* emitida y notificada el 18 de julio de 2023, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI o foro primario). Mediante el aludido dictamen, el foro primario declaró Ha Lugar la *Demanda* presentada por el señor Gilberto J. Alvarado Díaz (señor Alvarado Díaz o parte apelada).

Por los fundamentos que expondremos a continuación **revocamos** la *Sentencia* apelada.

**I.**

Según surge del expediente apelativo, el 11 de abril de 2019, el señor Alvarado Díaz presentó una *Demanda*[1] sobre acción reivindicatoria contra Kéfruits, LLC (Kéfruits). En esta, alegó que, mediante la escritura pública número seis (6) otorgada el 15 de mayo de 2013 ante la notaria Loyda E. Rivera Torres, compró a la familia

---

[1] Apéndice del alegato de la parte apelada, págs. 3-7.

Número Identificador
SEN2024_____

Besosa[2] dos fincas a precio alzado por la suma de $71,150.00. La finca objeto de la controversia que aquí nos ocupa es la identificada como la "SECOND PROPERTY" cuyo número de finca es el 865 y que se describe a continuación:

> "RÚSTICA: Fracción de terreno que radica en el Barrio Bajura del término municipal de Cabo Rojo, con cabida de diecinueve cuerdas equivalentes a siete hectáreas, cuarenta y seis áreas, setenta y ocho centiáreas, más o menos, colindante al Norte, con el camino vecinal que conduce a San Germán; por el Este; con tierra de María Martí y Serra; por el Sur, con las de Federico Dávila, antes, que son las conocidas por Hacienda Margarita, separado por el Río Viejo; y por el Oeste, con el camino que conduce a Monte Grande." -The Second Property is recorded at page 34 of volumen 27 of Cabo Rojo, of the Registry, Property Number 865.[3]

El señor Alvarado Díaz adujo que la finca 865 consta inscrita a su favor, pero Kéfruits cercó y se apoderó de la referida finca bajo un presunto contrato de arrendamiento con la ATPR. Por tanto, solicitó al TPI que se le reivindicara en la posesión, uso y disfrute de la finca número 865 y, en consecuencia, se ordenara a Kéfruits desalojar dicha propiedad.

El 6 de mayo de 2019, la ATPR presentó una *Moción Urgente Solicitando Intervención en el Caso al Amparo de la Regla 21 de las de Procedimiento Civil*[4]. En su escrito, adujo que Kéfruits mantiene una relación contractual con la ATPR mediante Contrato de Arrendamiento desde el 31 de enero de 2012. Por entender que una orden o determinación del foro primario pudiera afectar el contrato entre las partes y exponer a la agencia a una reclamación en daños por parte de su arrendatario, la ATPR solicitó que se permitiera su intervención en los procedimientos en este caso al amparo de las Reglas 16.1, 21.1 y 21.2 de las de Procedimiento Civil. En esa misma

---

[2] Leticia E. Besosa Quiñones, Victoria Stephanie Buko Besosa, Francisco Augusto Besosa Stubbe, Francisco Alejandro Besosa Martínez y Estela Irene Besosa Martínez.

[3] Apéndice del recurso de Apelación, págs. 1-9. Surge de la escritura de compraventa, que el negocio comprendió la venta de una primera propiedad registrada como finca número 669 con una cabida de siete y media cuerdas y número de catastro 309-000-007-05-000. La segunda finca identificada con el número 865 constaba de diecinueve cuerdas y fue identificada con el número de catastro 309-000-010-61-000.

[4] Véase Entrada Núm. 22 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

fecha, notificada al día siguiente, el TPI emitió una Orden[5] en la que declaró *Ha Lugar* la solicitud de intervención de la ATPR.

El 7 de mayo de 2019, Kéfruits presentó *Contestación a la Demanda* y *Reconvención*[6]. En su contestación a la demanda, negó la mayoría de las alegaciones en su contra y presentó varias defensas afirmativas. En su reconvención, adujo que desde el 2012 ocupa como arrendataria de la ATPR los terrenos cuya posesión reclama el señor Alvarado Díaz, lo que hace improcedente el interdicto posesorio instado por éste. Asimismo, Kéfruits añadió que la finca que ha poseído tiene una cabida de 225.25 cuerdas, por lo que, no tiene relación alguna con la finca 865, la cual reclama el señor Alvarado Díaz como suya. Por tanto, solicitó que se declarara Con Lugar la *Contestación a la Demanda* y *Reconvención* así como, en su consecuencia, se desestimara con perjuicio la demanda de epígrafe. Además, solicitó el pago de los gastos y honorarios de abogados por una suma no menor de $2,500.00.

El 12 de mayo de 2019, el señor Alvarado Díaz enmendó la *Demanda*[7] a los fines de convertirla en una acción reivindicatoria. En esencia, alegó que la propiedad descrita en el contrato de arrendamiento entre la ATPR y Kéfruits no coincide con la descripción de la finca número 865, predio que la parte apelada reclama en el presente caso.

El 30 de mayo de 2019, Kéfruits presentó su *Contestación a la Demanda*[8], en la que nuevamente negó la mayoría de las alegaciones contenidas en la *Demanda* y presentó varias defensas afirmativas. En síntesis, arguyó que el señor Alvarado Díaz no cumplía con los requisitos para solicitar la acción reivindicatoria. Además, presentó una reconvención, en la que adujo que la parte

---

[5] Véase Entrada Núm. 25 del SUMAC.
[6] Apéndice del alegato de la parte apelada, págs. 8-10.
[7] Véase Entrada Núm. 32 del SUMAC.
[8] Véase Entrada Núm. 39 del SUMAC.

apelada ha mostrado una actitud de temeridad, por lo cual, solicitó que se le impusiera sanciones y se le ordenara pagar gastos y honorarios de abogado, por una suma no menor de $3,500.00.

Por su parte, el 31 de mayo de 2019, la ATPR compareció mediante *Contestación a Demanda*[9], en la que incluyó como defensa afirmativa que el terreno arrendado a Kéfruits fue adquirido por la ATPR mediante compraventa efectuada el 29 de octubre de 1948 y que dicha propiedad consta inscrita a favor de la ATPR en el Registro de la Propiedad. También, planteó falta de parte indispensable en cuanto a la parte que comparece como vendedora en la escritura de compraventa, por si es que en algún momento la parte vendedora le hizo representación a la parte apelada de que parte de los terrenos adquiridos eran los que ha utilizado la ATPR por décadas. Por último, alegó prescripción adquisitiva bajo el argumento de que la ATPR ha ejercido pleno dominio, posesión y explotación agrícola de sus terrenos por más de setenta (70) años, sin intervención, reclamación o perturbación alguna.

Tras varias incidencias procesales, innecesarias pormenorizar para atender el recurso, el 1 de septiembre de 2022, las partes presentaron el *Informe de Conferencia con Antelación a Juicio*[10]. Del mismo se desprende, entre otras cosas, que la ATPR presentó objeción a una tercera enmienda a la *Demanda* por la parte apelada mediante la cual pretendía fundamentar su acción de reivindicación[11]. Además, los representantes legales de las partes

---

[9] Véase Entrada Núm. 40 del SUMAC.
[10] Véase Entrada Núm. 101 del SUMAC.
[11] Véase Entrada Núm. 101 del SUMAC, pág. 5. La ATPR señaló lo siguiente:
Mediante este inciso de hechos pertinentes a las reclamaciones de las partes, el demandante pretende enmendar nuevamente la Demanda haciendo alegaciones de que contrató un ingeniero y reconociendo que la descripción registral de la propiedad de la cual alega solicitar su reivindicación es errónea, según está descrita en la autorización judicial que permitió la compraventa, el registro de la propiedad, la Certificación Registral que presentó, la Escritura mediante la cual adquirió el inmueble y los dos planos (2011 y revisión del 2013) preparado por el agrimensor contratado por la parte que le vendió los inmuebles. […].

informaron haber llegado a unas dieciséis (16) estipulaciones de hechos sobre las cuales no existe controversia.

Así las cosas, se calendarizó el Juicio en su Fondo para los días 23, 27 y 28 de marzo de 2023. En cuanto a la prueba testifical, el señor Alvarado Díaz presentó al Dr. Gilberto J. Alvarado Díaz y al perito Ing. Luis G. Rodríguez Fernández. Por su parte, Kéfruits presentó como testigo al señor Pedro M. Valero. Mientras que la ATPR informó al TPI que el agrimensor Juan Carlos Mercado Méndez, a quien había anunciado como perito, había renunciado a su empleo en la ATPR, por lo que no estaba disponible para testificar y se renunciaba a su testimonio. No obstante, la ATPR presentó como testigo a la agrónoma María de Lourdes Márquez Higgs.

Según se desprende del expediente, las partes sometieron en el juicio como prueba documental estipulada, la siguiente:

I.      Escritura número 6, otorgada el 15 de mayo de 2013, ante la notaria Loyda E. Rivera Torres.

II.     Certificación registral relativa a la finca 865.

III.    Certificación registral relativa a la finca 3801.

IV.     Certificación registral relativa a la finca 5375.

V.      Contratos de arrendamientos entre la ATPR y Kéfruits.

VI.     Hoja 4 de 6 del Plano levantado por el Agrimensor René Guerra Menéndez, con fecha de 8 de abril de 2011.

VII.    Hoja 2 de 6 del Plano levantado por el Agrimensor René Guerra Menéndez, con fecha de 8 de abril de 2011.

VIII.   Contrato de Arrendamiento entre la ATPR y Ángel Riquelme Matos otorgado el 28 de marzo de 2005.

IX.     Plano del Ing. Luis G. Rodríguez Fernández del 2014.

X.      Plano de Russell & Co. de julio de 1936.

XI.     Plano de la Finca Margarita, Castro, Ronda y Rocamora propiedad de Russell & Co. de julio 1945.

XII.    Plano de mensura de la Colonia Margarita del 1946.

Los siguientes documentos del señor Alvarado Díaz fueron admitidos en evidencia sin objeción de la parte demandada.

**Exhibit 1:** Carta del Lcdo. José M. González Romanace del 16 de junio de 2016.

**Exhibit 2:** Carta de Kéfruits al Lcdo. José M. González Romanace del 25 de junio de 2016.

**Exhibit 3:** Carta dirigida al Lcdo. Edmundo Rosaly Rodríguez del 2 de diciembre de 2016.

**Exhibit 4:** Carta dirigida al Agrónomo Juan L. Rodríguez Reyes del 22 de enero de 2018.

**Exhibit 5:** Carta dirigida al Sr. Gilberto Alvarado Cruz del 18 de octubre 2018, consta de 9 folios.

**Exhibit 6:** Informe Pericial del Ing. Luis G. Rodríguez Fernández y Curriculum Vitae.

Tras escuchar y aquilatar la prueba desfilada, el 18 de julio de 2023, el foro primario emitió y notificó la *Sentencia*[12] apelada. En su dictamen, el foro primario esbozó las siguientes cincuenta y cuatro (54) determinaciones de hechos que merecieron su credibilidad durante el juicio:

1. [Leticia] E. Besosa Quiñones, Victoria Stephanie Buko Besosa, Francisco Augusto Besosa Stubbe, Francisco Alejand[r]o Besosa Martínez y Estela Irene Besosa Martínez vendieron dos fincas a Dr. Gilberto José Alvarado Díaz por precio alzado por la suma de $71,150.00 mediante la escritura número 6 otorgada el 15 de mayo de 2013 ante la Notaria Loyda E. Rivera Torres.

2. Una de las fincas adquiridas por el Dr. Alvarado se identificó en la escritura antes relacionada como Second Property y se describió como sigue:
--**RÚSTICA**: Fracción de terreno que radica en el Barrio Bajura del término municipal de Cabo Rojo, con cabida de diecinueve cuerdas equivalentes a siete hectáreas, cuarenta y seis áreas, setenta y ocho centiáreas, más o menos, colindante al Norte con el camino [vecinal] que conduce a San Germán; por el Este, con tierra de María Martí y Serra; por el Sur, con las de Federico Dávila, antes, que son las conocidas por Hacienda Margarita, separado por el Río Viejo; y por el Oeste, con el camino que conduce a Monte Grande.[13]

3. El Agrimensor René Guerra Menéndez levantó un plano el 8 de abril de 2011 en cuya hoja denominada 4 de 6 aparece la finca 865 identificada como Parcela 8.4. El Agrimensor René Guerra Menéndez hizo una revisión del plano en los meses de marzo y abril de 2013. En la hoja denominada 2 de 6 aparece la finca 865 identificada como Parcela 8.

4. El plano levantado por el Ing. y abogado Luis G. Rodríguez Fernández ubica la finca 865 en un lugar distinto al que la ubicó el Agrimensor René Guerra Menéndez.

5. El Catastro Digital del Centro de Recaudación de Ingresos Municipales (CRIM) identifica la finca 865 con el número de

---

[12] Apéndice del recurso de Apelación, págs. 189-213.
[13] Finca Núm. 865 Folio 72 del Tomo 1031 de Cabo Rojo inscrita a favor de Gilberto J. Alvarado Diaz.

catastro 309-000-007-19-000, ubica su dirección física en BO. SABANA ENEAS "FCA SAN CARLOS", CARR. 114 KM.HM 10.52 INT SAN GERMAN PR, Municipio Cabo Rojo, e identifica a su dueño como Gilberto José Alvarado Díaz.

6. El 16 de junio de 2016 el Lcdo. José M. González Romanace, en representación del Dr. Gilberto Alvarado Díaz —erróneamente denominado Gilberto Acevedo Díaz— cursó una carta a Pedro M. Valero y Luisana Suárez, como agentes residentes de la corporaciones KEFOODS, LLC y KEFRUITS LLC, respectivamente, en la que les indicó que una de las corporaciones estaba utilizando la finca 865 para pastar ganado sin autorización de su dueño y les requirió cesar de hacerlo y remover el ganado y equipo que allí tuvieran en 15 días.

7. El 21 de junio de 2016 el Lcdo. José M. González Romanace, en representación del Dr. Gilberto Alvarado Díaz —erróneamente denominado Gilberto Álvarez Díaz— cursó una carta sustituta bajo los mismos términos a Pedro M. Valero y Luisana Suárez.

8. El 26 de junio de 2016 la Sra. Luisana Suárez, en representación de KéFruits, LLC envió una carta al Lcdo. González Romanace en respuesta a la que este cursara el 21 de junio, en la que le recomendó dirigirse a la Autoridad de Tierras de Puerto Rico quien era el dueño de los terrenos arrendados a KéFruits, LLC.

9. La ATPR es dueña en pleno dominio de una finca denominada Colonia Margarita radicada en los barrios de Bajura y Monte Grande de Cabo Rojo y Sabana Eneas de San Germán.

10. Descripción de la Finca 3801 y 5375:

--**RÚSTICA**: Finca denominada "Colonia Margarita" radicada en los Barrios de Bajura y Monte Grande del término municipal de Cabo Rojo y Sabana Eneas del término municipal de San Germán con cabida de OCHOCIENTAS CINCUENTA Y OCHO CUERDAS CON SIETE MIL CUATROCIENTAS VEINTISEIS DIEZMILESIMAS DE OTRA CUERDA (858.7426), equivalentes a TRES MILLONES [TRESCIENTOS] SETENTA Y CINCO MIL DOSCIENTOS UNO PUNTO NUEVE MIL CIENTO CINCUENTA METROS CUADRADOS (3,375,2019150 m.c.) en colindancia por el NORTE con el Río Estereo y con terrenos propiedad de Héctor Federico Ronda, por el SUR con terrenos propiedad de Juan Ramírez; José Soto; con un camino real con terrenos de Cecilia Martínez; la Carretera Insular número veintinueve, con otro camino real, con un caño que la separa de los terrenos de Nicomedes Polanco, con terrenos propiedad de Cecilia Martínez y José Cuevas Martínez, por el ESTE, con terrenos propiedad de José Cuevas Martínez, Amalia Seda, Fidel Ortiz y Francisco Seda, con la Carretera Insular número veintinueve, con terrenos propiedad de Alfredo Ramírez de Arellano, con una quebrada que la separa de los terrenos de Emilio Figueroa y Alfredo Ramírez de Arellano, con terrenos propiedad de Central Eureka, con un camino real, con terrenos propiedad de Salomón Costa, la Carretera Insular Número dos y con terrenos de la Central Eureka; por el OESTE con terrenos propiedad de Cecilia Martínez, con la Carretera Insular Número veintinueve, con terrenos propiedad de la Sucesión Juan Arroyo, con un

caño que la separa de los [terrenos] propiedad de la Sucesión de Juan Arroyo y Alfredo Ramírez de Arellano, con terrenos propiedad de Alfredo Ramírez de Arellano y René Ramírez, con un camino real, con terrenos propiedad de Alfredo Ramírez de Arellano, con otro camino real y con terrenos propiedad de Alfredo Ramírez de Arellano.-------------------------------------------------------

Esta colonia está cruzada en su parte Norte y en dirección Oeste por la vía de la American Railroad Company of Porto Rico y por un camino real en dirección Oeste y partiendo de camino real arriba mencionado por otro camino real en dirección Noreste y por otro Camino real que parte del primer camino real arriba mencionado, en dirección Sureste y en forma circular empalma con el primer camino real mencionado en su parte Este y de este mismo camino real de forma circular, por otro camino real en dirección Sureste que empalma con la Carretera Insular Número veintinueve; por la Carretera Insular Número Dos en dirección Noroeste. En su parte Sur, por la Carretera Insular número veintinueve y un camino que parte de la mencionada carretera en dirección Noroeste.- OCHOCIENTOS CINCUENTA Y SEIS CUERDAS CON SIETE MIL CUATROCIENTAS VEINTISEIS DIEZMILESIMAS DE OTRA CUERDA (856.7426), equivalentes a TRES MILLONES TRESCIENTOS SESENTA Y SIETE MIL SETECIENTOS CUARENTA Y UNO PUNTO MIL CIENTO CINCUENTA METROS CUADRADOS, (3,367.741.1150 m.c.), están situadas en los Barrios Bajura y Monte Grande del término municipal de Cabo Rojo en colindancia por el NORTE con el Río Estero y con terrenos propiedad de don Héctor Federico Ronda; por el SUR con terrenos propiedad de don Juan Ramírez, José Soto, con un camino real, con terrenos de Cecilia Martínez, la Carretera Insular Número veintinueve, con otro camino real, con un caño que la separa de los terrenos de Nicomedes Palermo, con terrenos propiedad de Cecilia Martínez y José Cuevas Martínez; por el ESTE con terrenos propiedad de José Cuevas, Amalia Seda, Fidel Ortiz y Francisco Seda, con la Carretera Insular número veintinueve, con terrenos propiedad de Alfredo Ramírez de Arellano, con una quebrada que la separa de los terrenos propiedad de Emilio Figueroa y Alfredo Ramírez de Arellano, con terrenos propiedad de Central Eureka, con un camino real, con terrenos propiedad de Salomón Costa, la parcela de dos cuerdas de esta Colonia en la Jurisdicción de San Germán; Carretera Insular Número dos y con terrenos de la Central Eureka; por el OESTE con terrenos propiedad de Cecilia Martínez, con la Carretera Insular Número veintinueve, con terrenos propiedad de la Sucesión Juan Arroyo, con un caño que la separa de los terreno[s] propiedad de la Sucesión de Juan Arroyo y Alfredo Ramírez de Arellano, con terrenos propiedad de Alfredo Ramírez de Arellano y René Ramírez, con un camino real, con terrenos propiedad de Alfredo Ramírez de Arellano, con otro camino real y con terrenos propiedad de Alfredo Ramírez de Arellano.------------------------------------------

Y DOS CUERDA[S] (2.000), equivalentes a SIETE MIL OCHOCIENTOS SESENTA PUNTO OCHO MIL METROS CUADRADOS (7,860.8000 m.c.) están situadas en el Barrio Sabana Eneas del término municipal de San Germán en colindancias actualmente por el NORTE, SUR y OESTE con la parcela de NOVECIENTOS TREINTA Y UNA CUERDA con SEISCIENTAS CINCUENTA Y UNA MILESIMAS (931.651), en la jurisdicción de Cabo Rojo y al ESTE con terrenos de la Hacienda Santa Ana. ---------

11. El 31 de enero de 2012 la ATPR arrendó a KEFRUITS LLC un predio de 404.50 cuerdas que forma parte de la Finca Providencia, radicada en el Barrio Bajura de Cabo Rojo por un término de 5 años. La ATPR denomina Providencia la finca antes descrita como Colonia Margarita para efectos administrativos. No se levantó un plano del predio arrendado pero el mismo se delimitó geográficamente en un croquis que se acompañó al contrato. El Contrato de Arrendamiento fue debidamente registrado ante la Oficina del Contralor de Puerto Rico.

12. El 28 de noviembre de 2016 la ATPR arrendó a KEFRUITS LLC dos predios de 158.64 cuerdas y 178.25 cuerdas, respectivamente que forman parte de la Finca Providencia, radicada en el Barrio Bajura de Cabo Rojo por un término de 10 años. No se levantó un plano de los predios arrendados pero los mismos se delimitaron geográficamente en un croquis que se acompañó al contrato. El Contrato de Arrendamiento fue debidamente registrado ante la Oficina del Contralor de Puerto Rico.

13. La verja construida por la codemandada Kefruit fue con el aval de la Arrendadora, la ATPR.

14. Que, anterior a que el terreno fuera arrendado a la codemandada, Kefruits, LLC., la finca que incluye los terrenos en controversia estuvo arrendado al Sr. Ángel Riquelme Matos y la Sra. Luz Soraida Matías Cordero mediante un contrato de arrendamiento suscrito el 28 [de] marzo de 2005. El Contrato de Arrendamiento fue debidamente registrado ante la Oficina del Contralor de Puerto Rico.

15. Las conversaciones entre las partes continuaron por un largo tiempo. El 17 de noviembre de 2017 se celebró una reunión en las oficinas del Agrónomo Juan Luis Rodríguez Reyes, entonces Director Ejecutivo de la ATPR. El 22 de enero de 2018 el Sr. Gilberto Alvarado Cruz, padre del Dr. Alvarado, escribió una carta al Agrónomo Rodríguez Reyes exponiendo argumentos para sustentar la posición de que la ATPR había ocupado la finca 865.

16. En el 2012, mientras el demandante estaba en conversaciones preparatorias a la adquisición de la propiedad visitó el área donde esta ubica con el corredor de bienes raíces (Realtor) que representaba a los dueños y con el Agrimensor René Guerra Menéndez a quien los dueños encomendaron la preparación de planos de los terrenos.

17. Durante esa visita observó que los terrenos estaban boscosos y no estaban verjados.

18. El 31 de enero de 2012 la ATPR y KeFruits suscribieron un contrato de arrendamiento sobre un predio de terreno cuya descripción era la siguiente:

--**RÚSTICA**: Predio radicado en el Barrio Bajura del término municipal de Cabo Rojo, Puerto Rico, con una cabida superficial aproximada de 404.50 cuerdas y en lindes por el NORTE: con el cauce del Río Guanajibo, terrenos privados y servidumbre de la Carretera número 2, y terrenos de la Finca Providencia, propiedad de la Autoridad de Tierras de Puerto Rico; por el SUR, con terrenos privados y terrenos de la Finca Providencia, propiedad de la Autoridad de Tierras de Puerto Rico; por el ESTE, con terrenos privados y servidumbre de la carretera número 2 y terrenos de la Finca Providencia,

propiedad de la Autoridad de Tierras de Puerto Rico; y por el OESTE, con terrenos de privados y terrenos y camino de la Finca Providencia, propiedad de la Autoridad de Tierras de Puerto Rico. -----------------------------------------------------------

Se hizo formar parte del contrato un croquis que lleva una nota que dice: "Este croquis es con el propósito de localización y no necesariamente ilustra o indica la cabida exacta o colindancias del predio arrendado."

19. El Sr. Pedro Valero atestó que al KeFruits arrendar los terrenos en el 2012 los mismos se encontraban "abandonados" y no tenían verjas.

20. Declaró además que un momento posterior a que se suscribiera el contrato de arrendamiento la ATPR envió personal de agrimensura para determinar las colindancias. No vió que estas personas tuvieran escrituras consigo cuando realizaron el trabajo. No se le entregó un plano de los terrenos.

21. KeFruits contrató al Sr. Luis Torres para construir verjas en las colindancias que estableció el personal de la ATPR.

22. El 15 de mayo de 2013, Alvarado adquirió dos propiedades de la Sra. Leticia E. Besosa Quiñones, la Sra. Victoria S. Buko Besosa, el Lcdo. Francisco A. Besosa Stubbe, el Lcdo. Francisco A. Besosa Martínez y la Srta. Estela I. Besosa Martínez, mediante la escritura de compraventa número 6, otorgada ante la notaria Loyda E. Rivera Torres.

23. La finca objeto de la controversia de este caso es la identificada como la "SECOND PROPERTY" cuyo número de finca es el 865.

24. En la escritura de compraventa, redactada en inglés, se indicó que la finca 865 tenía el número de catastro 309-000-010-61-000; que la venta era por precio alzado, que los vendedores levantaron planos de las propiedades y que si el comprador hacía nuevas mensuras de los terrenos el precio de compraventa no se vería afectado por sus resultados.

25. Alvarado recibió copia de un plano levantado por el Agrimensor René Guerra Menéndez el 8 de abril de 2011 y de su revisión efectuada en los meses de marzo y abril de 2013. —Exhibits VI y VII de la prueba documental estipulada— En ambos planos, se indica que se utilizó como referencia un plano de mensura realizado por la firma Russell & Co. Sucrs. S. en C., certificado por el Ing. F. Ramírez, Licencia Núm. 826 de fecha 27 de junio de 1936, que constituye el Exhibit X de la prueba estipulada.

26. La finca 865 aparece identificada en los planos como "Parcela 8". En el plano revisado en 2013 se indica que se trata de la finca 865 inscrita al folio 34 del tomo 27 de Cabo Rojo y se identifica como propietaria la Sucn. Francisco Adolfo Besosa Quiñones. Las 4 parcelas incluidas en el plano que llevan los números 5, 6, 7 y 8 ubican [en] el Barrio Sabana Eneas de San Germán. En el plano de 2011, el Agrimensor Guerra indica que las parcelas 5 y 6 formaban parte de la finca Filial Amor, que es la finca a la que se refiere el plano del Ing. F. Ramírez de 1936. En la revisión de 2013, aparecen identificadas como parte de la Hacienda San Carlos.

27. Los planos levantados por el Agrimensor Guerra ubican la finca 865 en el barrio Sabana Eneas de San Germán, con el número de catastro 309-000-008-06, le adscriben una cabida de 19.0000 cuerdas con las siguientes colindancias: Norte: Antiguo Camino, Este: La Parcela 5 propiedad de la Sucn. Francisco Adolfo Besosa Quiñones; Sur: Caño, Oeste, una porción Camino Existente y el resto con terrenos de la Autoridad de Tierras. Estos últimos los ubica en el Municipio de San Germán, colindando por el Oeste con un camino orientado de Norte a Sur que separa los municipios de San Germán y Cabo Rojo. Las colindancias de la "Parcela 8" en el plano del Agrimensor Guerra no coinciden con las de la escritura de compraventa.

28. Cuando Alvarado acudió al Centro de Recaudación de Ingresos Municipales (CRIM) para inscribir el traspaso de las fincas compradas por él mediante la escritura de compraventa número 6, se percató de discrepancias entre lo que surge de los mapas catastrales y los planos levantados por el Agrimensor Guerra y contrató al ingeniero y abogado Luis. G. Rodríguez Fernández para aclarar las discrepancias.

29. Luis. G. Rodríguez Fernández se graduó de ingeniería civil en el Recinto Universitario de Mayagüez de la Universidad de Puerto Rico en 1977 y tiene la licencia de ingeniero y agrimensor número 8381. Se recibió con Juris Doctor en la Pontificia Universidad Católica de Puerto Rico en 2003 y tiene el número de RUM 15,061.

30. Rodríguez Fernández visitó el área donde el plano del Agrimensor Guerra ubicó la finca 865 en junio de 2014. En la visita estuvo acompañado del demandante y el padre de este y tenía consigo la escritura de compraventa. Observó que el predio que respondía a la descripción de la finca 865 estaba cercado.

31. En su informe describió el predio como sigue: Se realizó la mensura de la finca, por sus laterales Norte y Oeste colindan con caminos establecidos. Por el Norte se encuentra un camino reconocido como Camino Real que lleva a la carretera #114 (que discurre de San German hacia Mayagüez, pasando por áreas de los Municipios de Hormigueros y Cabo Rojo). Por el Oeste discurre un camino identificado como vecinal que lleva hasta la carretera 101, en el tramo que está entre San German y Cabo Rojo, en el barrio Monte Grande. Por el Este está completamente verjado y colinda con una propiedad que actualmente es propiedad de Dr. Gilberto Alvarado. Por el Sur siguiendo la verja del lado Este llegamos hasta un cuerpo de agua actualmente identificado como Quebrada Trina, luego de haber pasado un zanjón que identificamos como servidumbre del Rio Viejo.

32. El plano de mensura levantado por Rodríguez Fernández reveló una cabida de 68,552.6327 metros cuadrados equivalentes a 17.4416 cuerdas. El plano fue sometido a la Oficina de Gerencia de Permisos (OGPe) junto con una solicitud de rectificación de cabida toda vez que la cabida según la escritura y la inscripción registral era de 19 cuerdas, más o menos.

33. OGPe autorizó el plano el 3 de octubre de 2014 en el caso núm. 2014-280307-API-76039. Posteriormente, el CRIM asignó el número de catastro 3009-000-007-19- 000 a la finca, ya que esta estaba incluida en un número que agrupaba otras fincas (309-000-006-11-000).

34. Atestó Rodríguez Fernández que sus observaciones de campo concuerdan con la descripción de la finca que consta de la escritura número 6 que es:

--**RÚSTICA:** Fracción de terreno que radica en el Barrio Bajura del término municipal de Cabo Rojo, con cabida de diecinueve cuerdas equivalentes a siete hectáreas, cuarenta y seis áreas, setenta y ocho centiáreas, más o menos, colindante al Norte con el camino vecina[l] que conduce a San Germán; por el Este, con tierra de María Martí y Serra; por el Sur, con las de Federico Dávila, antes, que son las conocidas por Hacienda Margarita, separado por el Río Viejo; y por el Oeste, con el camino que conduce a Monte Grande.-

35. Conforme al título del demandante, tres de las cuatro colindancias del predio se refieren a colindancias naturales: dos caminos vecinales y un río. El plano del Ing. Rodríguez Fernández identificó el camino que constituye la colindancia Norte descrita en la escritura. También incluye el camino vecinal que conduce a Monte Grande, que se indica como la colindancia Oeste en la escritura.

36. Igualmente, identificó la colindancia sur con los terrenos de la Hacienda Margarita, hoy propiedad de la ATPR, tal y como aparece en la descripción registral de la finca 865: "al Sur con los de don Federico Dávila, antes, que son los conocidos por Hacienda Margarita, separados por el Río Viejo." Las colindancias naturales antes indicadas permiten establecer con certeza la localización del predio.

37. En contrainterrogatorio, Rodríguez Fernández reconoció que conforme al Exhibit XI de la prueba estipulada, un plano de la Colonia Margarita de 1945, los terrenos en controversia están dentro del "property line" de los terrenos de dicha finca.

38. El 16 de junio de 2016 el demandante, a través del licenciado José M. González Romanace, le envió una carta a la corporación en la que se les notificó sobre la titularidad de la propiedad donde está su ganado y se le concedió un término de quince días para remover el ganado y cualquier equipo o instalación que allí tuvieren.

39. El 25 de junio de 2016 la señora Luisana Suárez de KeFruits respondió con una carta en la que indicó [al] Lcdo. González Romanace que debía comunicarse con la Autoridad de Tierras que son los dueños de los terrenos que ellos tienen arrendados.

40. El Lcdo. González Romanace comenzó conversaciones con la ATPR. Con una carta fechada el 2 de diciembre de 2016 le envió al Lcdo. Edmundo Rosaly Rodríguez 6 documentos para acreditar que el demandante era titular del predio en controversia.

41. El 22 de enero de 2018 el Sr. Gilberto Alvarado Cruz, padre del demandante, cursó una carta al Agro. Juan Luis Rodríguez Reyes, Director Ejecutivo de la ATPR[,] en la que hizo alusión a una reunión que sostuvieron el 17 de noviembre de 2017 e insistió en que los planos y documentos que las partes poseen acreditan que el [demandante es] el verdadero dueño de los terrenos en controversia.

42. El 18 de octubre de 2018 el Lcdo. Dickson Ortiz Maíz respondió por carta al Sr. Alvarado Cruz y expuso que el plano de mensura de la Colonia Margarita de 1946

constituye la fuente más segura y confiable para establecer la titularidad sobre los terrenos en controversia y que la ATPR solo ocupa terrenos de su propiedad. Le recomendó dirigir cualquier reclamación a la parte vendedora en la compraventa.

43. Los Exhibits III y IV de la prueba estipulada son certificaciones registrales de las fincas número 3801 de Cabo Rojo y la 5375 de San Germán que juntas forman la Colonia Margarita, hoy propiedad de la ATPR. De su inscripción primera se desprende que [de] la Colonia Margarita tenía una cabida de 933.206 cuerdas y fue inscrita el Registro de la Propiedad el 11 de septiembre de 1948 a nombre de la Sociedad Civil Agrícola Russell and Company Sucesores, en adelante, denominada Russell & Co.

44. La Colonia Margarita se creó por la agrupación de 12 fincas ubicadas en el municipio de Cabo Rojo cuya cabida agrupada era 931.206 cuerdas y una de 2 cuerdas localizada en el barrio Sabana Eneas de San Germán. La más grande de las 12 fincas de Cabo Rojo agrupadas tenía 364 cuerdas. La agrupación se efectuó mediante la escritura número 15 otorgada el 15 de junio de 1948 ante el Notario F. Manuel Toro que se inscribió en el Registro de la Propiedad el 11 de septiembre de 1948 a favor de Russell & Co.

45. La descripción de las dos cuerdas que ubican en el barrio Sabana Eneas de San Germán indica que colindan por el Norte, Sur y Oeste con los terrenos la Colonia Margarita ubicados en Cabo Rojo y por el Este con terrenos de la Hacienda Santa Ana.

46. De la segunda inscripción de las fincas se desprende que Russell & Co. vendió la finca 3801 de Cabo Rojo y la finca 5375 de San Germán a la ATPR mediante la escritura número 34 otorgada ante el Notario Antonio Riera el 29 de octubre de 1948, cuya venta quedó inscrita en el Registro de la Propiedad el 10 de enero de 1949.

47. Del Exhibit III de la prueba estipulada se de[s]prende que de la porción de la finca ubicada en el municipio de Cabo Rojo se hicieron las siguientes segregaciones: 3.0549 cuerdas en 1951; 71.3044 cuerdas en junio de 1968; 409.1606 m.c. en julio de 1973; un solar de 1,322.5122 m.c. y otro de 326.1832 m.c. en 1997. Estas segregaciones redujeron la cabida de la finca a la de 856.7456 cuerdas.

48. Los Exhibits X, XI y XII de la prueba estipulada son planos de fechas anteriores a que se creó por la agrupación de 13 fincas la "Colonia Margarita" que se describe en las certificaciones registrales, relativas a las fincas 3801 de Cabo Rojo y 5375 de San Germán.

49. El Exhibit X es un plano de julio de 1936 que se identifica como terrenos de Russell & Co. ubicados en la Finca Filial Amor en San Germán. El área en que aparecen los terrenos en controversia se identifica como "San Carlos".

50. El Exhibit XI es un plano levantado en el 1945 por José Ramírez Gautier de 4 fincas llamadas Margarita, Castro, Ronda y Rocamora que se indica tienen una cabida de 921.66 cuerdas y están localizadas en los Barrios Bajuras y Monte Grande de Cabo Rojo y Sabana Grande Abajo de San Germán. No se puede precisar que porción del plano ocupa cada una de esas 4 fincas.

51. El Exhibit XII es un plano de 1946 de La Colonia Margarita de Russell & Co. con cabida de 926.2044 cuerdas que incluye terrenos en los Barrios Bajuras y Monte Grande de Cabo Rojo y Sabana Grande Abajo de San Germán. El hecho de que la finca de mayor cabida de las que se agruparon en el 1948 para formar la finca 3801 de Cabo Rojo solo tenía 364 cuerdas hace imposible entender que la "Colonia Margarita" con cabida de 926.2044 a que se refiere el plano de 1946 corresponda a la actual finca 3801.

52. Los Exhibits X, XI y XII de la prueba estipulada muestran terrenos sitos en San Germán que tienen mucha más cabida que las 2 cuerdas ubicadas en el Barrio Sabana Eneas que forman parte de la "Colonia Margarita" que formaron la finca 3801 de Cabo Rojo y la finca 5375 de San Germán. Ello implica que terrenos en San Germán que se incluyeron en dichos planos no pasaron a formar parte de la "Colonia Margarita".

53. Dichos planos no reflejan la cabida actual de 856.7456 de la Colonia Margarita puesto que uno indica una cabida de 921.66 cuerdas y el otro 926.2044 cuerdas. Tampoco reflejan la ubicación de las 4 segregaciones que se hicieron de la finca ni como estas afectaron sus colindancias.

54. El Exhibit XII indica que incluye terrenos en el Barrio Sabana Grande Abajo de San Germán cuando en la descripción de la "Colonia Margarita" se indica que las 2 cuerdas que pertenecen al Municipio de San Germán están en el Barrio Sabana Eneas. Tampoco aparece en los planos la colindancia por el Este con la Hacienda Santa Ana que se identifica en la descripción de las 2 cuerdas ubicadas en el Barrio Sabana Eneas.[14]

Cónsono con lo anterior, el TPI declaró Con Lugar la demanda enmendada instada por el señor Alvarado Díaz y sin lugar la reconvención presentada por Kéfruits. En consecuencia, concedió la acción reivindicatoria de los terrenos objeto de la mensura practicada por el Ing. Luis G. Rodríguez Fernández y ordenó a Kéfruits y la ATPR a abandonar dichos terrenos y restituir la posesión de estos a la parte apelada en un término de treinta (30) días.

En desacuerdo con la determinación, el 16 de agosto de 2023, la ATPR presentó el recurso de *Apelación* que nos ocupa y le imputó al TPI la comisión de los siguientes errores:

I. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL APRECIAR TODA LA PRUEBA DOCUMENTAL ESTIPULADA POR TODAS LAS PARTES Y NO IMPUGNADA DURANTE EL JUICIO.

---

[14] Estas determinaciones de hechos incluyen las estipulaciones de hechos alcanzadas por las partes en su *Informe de Conferencia con Antelación a Juicio*: 1-16.

II. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL BASAR SU DETERMINACIÓN EN UNA OPINIÓN PERICIAL QUE NO CUMPLE CON LOS REQUISITOS MÍNIMOS DE CONFIABILIDAD.

III. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL RESOLVER QUE NO HUBO PRESCRIPCIÓN ADQUISITIVA.

IV. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN SU EVALUACIÓN Y CONCLUSIÓN DE QUE EL TERRENO EN DISPUTA ES PROPIEDAD DEL DEMANDANTE, AUN CUANDO LA DETERMINACIÓN DE HECHO NÚMERO 25 ES CONTRARIA A DICHA CONCLUSIÓN.

V. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR EN EL HECHO NÚMERO 28 QUE LA DUDA EN CUANTO AL PLANO SURGIÓ POR RAZÓN DE LA INSCRIPCIÓN DEL PREDIO A SU FAVOR EN EL CRIM.

VI. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LOS CAMINOS VECINALES A QUE SE HACE REFERENCIA EN UNOS Y OTROS DOCUMENTOS REPRESENTAN COLINDANCIAS NATURALES COMO SE EXPRESA EN LAS DETERMINACIONES DE HECHOS NÚMERO 35 Y 36.

VII. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN SU DETERMINACIÓN DE HECHO NÚMERO 49 QUE ESTABLECE QUE EL PLANO ESTIPULADO POR LAS PARTES Y NO IMPUGNADO DEL 1936 (EXHIBIT X, SEGÚN EL INFORME DE CONFERENCIA CON ANTELACIÓN AL JUICIO) ESTABLECE QUE LOS TERRENOS EN CONTROVERSIA SON PARTE DE LA FINCA SAN CARLOS.

VIII. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN SU DETERMINACIÓN DE HECHO NÚMERO 50 EN QUE EXPRESA QUE EL PLANO DEL 1945 (EXHIBIT XI, SEGÚN EL INFORME DE CONFERENCIA CON ANTELACIÓN AL JUICIO) NO ESTABLECE LAS PORCIONES Y CABIDAS DE CADA FINCA.

IX. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN LAS DETERMINACIONES DE HECHOS 52 Y 53 SOBRE LA CABIDA DE LA FINCA EN EL MUNICIPIO DE CABO ROJO Y SAN GERMÁN.

El 18 de agosto de 2023, la ATPR presentó una *Moción Informativa* en la que notificó que el 26 de julio de 2023 solicitó al TPI la regrabación de los procedimientos y, que una vez tuviesen acceso a la misma, realizarían las gestiones pertinentes para presentar una transcripción de la prueba oral ante este Tribunal de Apelaciones. Por tanto, el 22 de agosto de 2023, emitimos una *Resolución* en la que autorizamos someter la transcripción y le concedimos término a las partes a los fines de perfeccionar el recurso.

El 2 de octubre de 2023, la ATPR compareció mediante *Moción en Cumplimiento de Orden* junto con la cual sometió la transcripción de la vista en su fondo del caso de epígrafe.

Por su parte, el 16 de noviembre de 2023, el señor Alvarado Díaz presentó escrito intitulado *Alegato de la Parte Apelada, Gilberto José Alvarado Díaz.*

Con el beneficio de la comparecencia de las partes y de la transcripción de la prueba oral estipulada, procederemos a resolver.

**II.**

**-A-**

Es norma reiterada que las determinaciones de hechos y la adjudicación de credibilidad que hace un foro de instancia son merecedoras de gran deferencia por parte de los tribunales apelativos debido a la oportunidad que tiene el juzgador de hecho en dicho foro de observar y escuchar a los testigos. Así pues, un tribunal apelativo no debe intervenir con las referidas determinaciones de hechos ni con la adjudicación de credibilidad que haya hecho el Tribunal de Primera Instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto[15]. Solo ante la presencia de estos elementos o cuando la apreciación de la prueba no concuerde con la realidad fáctica es que un foro apelativo debe intervenir con la apreciación efectuada[16].

Ahora bien, nuestro Tribunal Supremo ha expresado que "[a]unque el arbitrio del juzgador de hechos es respetable, y merece deferencia, no es absoluto"[17]. Por eso, la apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo[18]. Cuando del examen de la prueba se desprende que el juzgador descartó injustificadamente elementos probatorios importantes o fundó su criterio en testimonios

---

[15] *Santiago Montañez v. Fresenius Medical,* 195 DPR 476, 490 (2016), *Serrano Muñiz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007); *In re Ruiz Rivera,* 168 DPR 246 (2006); *Álvarez v. Rivera,* 165 DPR 1, 25 (2005); *López Delgado v. Cañizares,* 163 DPR 119 (2004); *Hernández v. San Lorenzo Const.,* 153 DPR 405, 424-425 (2001).
[16] *Pueblo de P.R. v. Collazo,* 176 DPR 133 (2009); *Pueblo de P.R. v. Liliana Irizarry Irizarry,* 156 DPR 780 (2002); *Pueblo v. Acevedo Estrada,* 150 DPR 84, 99 (2000).
[17] *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013), *Méndez v. Morales,* 142 DPR 26 (1996).
[18] *Íd.*

improbables o imposibles, el Tribunal Supremo ha justificado la intervención del tribunal apelativo con la apreciación de la prueba realizada por el tribunal sentenciador[19]. El Tribunal Supremo reiteró estos principios y expresó que "el nivel de pasión, prejuicio o parcialidad que hace falta demostrar para impugnar exitosamente las determinaciones del foro primario sobre los hechos varía de caso a caso"[20]. Ante una alegación de este tipo, los foros apelativos debemos evaluar si el juzgador cumplió su función judicial de adjudicar la controversia específicamente conforme a derecho y de manera imparcial, pues solo así podremos descansar con seguridad en sus determinaciones de hechos[21].

En fin, como foro apelativo podemos intervenir únicamente con la apreciación de la prueba oral que haga el foro recurrido cuando este actúe con pasión, prejuicio, parcialidad, o cuando cometa un error manifiesto. Si no se demuestra que la sentencia fue dictada en esas circunstancias, tales determinaciones deben respetarse en la etapa de apelación.

**-B-**

El Art. 280 de nuestro Código Civil[22], expone que la propiedad es el derecho por virtud del cual una cosa pertenece en particular a una persona con exclusión de cualquiera otra. El antes mencionado artículo, además, reconoce el derecho del propietario de una cosa a establecer acción contra quien la posee para así reivindicarla.

Mediante la acción reivindicatoria, el propietario de una cosa la reclama de quien la tenga o posea. Para ello deberá identificar adecuadamente el objeto, probar que es suyo y probar que está

---

[19] *C. Brewer P.R., Inc. v. Rodríguez,* 100 DPR 826, 830 (1972).
[20] *Dávila Nieves v. Meléndez Marín, supra*, págs. 775-776.
[21] *Íd.*, pág. 777.
[22] 31 LPRA ant. sec. 1111. El referido Código Civil de Puerto Rico de 1930, según enmendado, 31 LPRA ant. sec. 1 *et seq.,* fue derogado por el Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5311 *et seq.*, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020, según enmendada, con vigencia desde el 28 de noviembre de 2020. Sin embargo, para propósitos de la adjudicación de este recurso, citamos el Código Civil derogado debido a que los hechos en controversia surgieron durante su vigencia.

indebidamente en posesión del demandado[23]. En cuanto al requisito de probar que la cosa es suya, quien reclame ser dueño de algo, no puede descansar únicamente en los vicios que tenga el título del demandado para así probar su título[24].

En cuanto al requisito de identificación, el Tribunal Supremo de Puerto Rico ha sostenido que, para instar una acción reivindicatoria, el demandante tiene que identificar de manera clara y precisa el objeto que reclama; establecer que tiene un derecho de propiedad sobre la misma; dirigir la acción contra quien la tenga en su posesión; y que el poseedor demandado no tenga ningún derecho que justifique su pretensión de retener la cosa frente al propietario[25].

En una controversia sobre reivindicación, es indudable que los planos constituyen, por lo menos, parte de la evidencia que puede utilizar un tribunal para restablecer a su verdadera situación los límites de diversos fondos[26].

### III.

En su recurso, la ATPR presenta nueve señalamientos de error, los cuales se pueden agrupar en tres asuntos, a saber: el segundo error (II), en el que se impugna la opinión pericial del Ing. Luis G. Rodríguez Fernández por alegadamente no cumplir con los requisitos mínimos de confiabilidad; el tercer error (III), en el que la ATPR argumenta que el TPI no acogió la defensa sobre prescripción adquisitiva; y, por último, los errores uno (I), cuatro (IV), cinco (V), seis (VI), siete (VII) y ocho (VIII), en los que se le imputa al TPI haber errado en la apreciación de la prueba y concluir en contradicción a las determinaciones de hechos números 25, 28, 35, 36, 49, 50, 52 y 53.

---

[23] *Ramírez Quiñones v. Soto Padilla*, 168 DPR 142, 157 (2006).
[24] *Castrillo v. Maldonado,* 95 DPR 885, 891-892 (1968).
[25] *Ramírez Quiñones v. Soto Padilla, supra*; *Pérez Cruz v. Fernández,* 101 DPR 365, 374 (1973).
[26] *Castrillo v. Maldonado, supra.*

No obstante, analizado el recurso, los anejos y la trascripción de la prueba oral estipulada, colegimos que los errores alegados por la parte apelante resultan inmateriales, puesto que la verdadera controversia que este Foro tiene ante sí es determinar si la parte apelada cumplió con los criterios para probar su acción de reivindicación. La normativa jurídica establecida por nuestro Tribunal Supremo requiere que la parte que alegue reivindicación tiene que probar lo siguiente: 1) que es el legítimo dueño de la cosa reclamada; 2) que la cosa reclamada, y no otra, es la que le pertenece; y 3) que el demandado ostenta su indebida posesión[27].

La acción reivindicatoria no es recobrar cualquier cantidad de terreno, sino una porción específica y determinada[28]. De ahí que la identificación que se exige al demandante consiste en establecer que la finca que se reclama es la misma a la que hace referencia a la prueba documental que este ofrece a los fines de acreditar su título de dominio. En específico, la evidencia correspondiente deberá precisar la situación, cabida y linderos del inmueble a reivindicarse[29]. Siendo así, para obtener una sentencia a su favor, el demandante deberá fundar su acción en la fuerza probatoria de sus títulos y no en los vicios que tenga el título que impugna. Cumplida esta obligación, corresponderá, entonces, al demandado señalar y demostrar su mejor título[30]. En esencia, una sentencia reivindicatoria declara el derecho de dominio de una parte y ordena a la otra parte a la entrega de la posesión en cuestión.

Veamos la prueba presentada en el caso de autos. Al examinar la escritura de compraventa número seis (6) otorgada el 15 de mayo de 2013 ante la notaria Loyda E. Rivera Torres, encontramos que la misma incluye la siguiente descripción de la finca 865:

---

[27] Artículo 280 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 1111; *Pérez Cruz v. Fernández, supra*, pág. 376; *Arce v. Díaz*, 77 DPR 624, 628-629 (1954).
[28] *Castrillo v. Maldonado, supra*, pág. 891.
[29] *Pérez Cruz v. Fernández, supra*.
[30] *Ramírez Quiñones v. Soto Padilla, supra*.

> RÚSTICA: Fracción de terreno que radica en el Barrio Bajura del término municipal de Cabo Rojo, con cabida de diecinueve cuerdas equivalentes a siete hectáreas, cuarenta y seis áreas, setenta y ocho centiáreas, más o menos, colindante al Norte con el camino vecinal que conduce a San Germán; por el Este, con tierra de María Martí y Serra; por el Sur, con las de Federico Dávila, antes, que son las conocidas por Hacienda Margarita, separado por el Río Viejo; y por el Oeste, con el camino que conduce a Monte Grande.

No obstante, la escritura de compraventa no contiene advertencia alguna sobre las colindancias ni cabidas de los predios en cuestión[31]. Tampoco acredita la forma en que los vendedores adquirieron dichos predios de terreno. Es decir, la escritura pública es deficiente por cuanto no da cuenta del documento público mediante el cual compraron los vendedores. Este es un punto neurálgico y fundamental cuando pretendemos sostener la corrección de la descripción del objeto de la compraventa, máxime en cuanto a bienes inmuebles se refiere. La escritura de compraventa, por sí sola, constituye una prueba fehaciente de que la parte apelada debió hacer más indagaciones e investigaciones por estar comprando a precio alzado.

Fíjese que el TPI hace constar en su dictamen que creyó la prueba documental y testifical admitida y, conforme a esto, consigna la determinación de hecho número 28 de la *Sentencia*[32]:

> Cuando Alvarado acudió al Centro de Recaudación de Ingresos Municipales (CRIM) para inscribir el traspaso de las fincas compradas por él mediante la escritura de compraventa número 6, se percató de discrepancias entre lo que surge de los mapas catastrales y los planos levantados por el Agrimensor Guerra y contrató al ingeniero y abogado Luis. G. Rodríguez Fernández para aclarar las discrepancias.

---

[31] Según surge de la escritura, solo existe una cláusula que exime de responsabilidad al vendedor en caso de que resulte la propiedad en menor cabida, la cual dispone como sigue:
> (d) Purchaser, at his own cost and expense, and his election, Will perform whatever is required to rectify, if necessary, the area of the Properties in the Registry of Property, expressly acknowledging that the Sellers have performed survey of the Properties and have disclosed to the Purchaser the areas of the Properties, resulting from those surveys. The Purchase and Sale carried out by this Deed is for the lot ("alzado") and will not be reduced or affected by the findings of those surveys. Véase, apéndice del recurso de *Apelación*, págs. 4-5.

[32] Véase Entrada Núm. 124 del SUMAC.

Particularmente, el TPI concluyó que "el plano levantado por el Ing. y abogado Luis G. Rodríguez Fernández ubica la finca 865 en un lugar distinto al que la ubicó el Agrimensor René Guerra Menéndez"[33].

Surge de la transcripción de la prueba oral que el testigo perito Ing. Luis G. Rodríguez Fernández declaró:

> P. Testigo, usted le ha dicho a este Tribunal que el plano que usted levantó en el 2014 cuadra exactamente con esa descripción.
> R. Eso es correcto
> P. Si eso es así, ¿por qué aquí dice que es el Barrio Bajuras de Cabo Rojo y eso no es lo que dice su plano? Si cuadra exactamente, como usted le ha indicado.
> R. Sí, cuadra específicamente las colindancias, la descripción de, de lo que dice de dónde deben estar las colindancias y demás. En la cuestión del, del área, del barrio, como indiqué, eso era, es segregación de una finca más grande y aparentemente, el, el notario puso la descripción original del barrio, porque el barrio Sabana Eneas y el Barrio Bajuras son colindantes. De hecho, ahí mismo es la colindancia de los dos municipios.
> P. Usted dice al Tribunal "Aparentemente". ¿Qué gestión usted hizo para verificar eso?
> R. Bueno, básicamente, lo, lo deduje por la experiencia de otras escrituras que he visto, que cuando ponen varios barrios, ponen el más grande de la propiedad.
> P. ¿Usted fue al Registro de la Propiedad?
> R. No.
> P. ¿Usted habló con los vecinos?
> R. No.
> P. ¿Usted primero fue al CRIM, anterior a preparar ese plano y habló con algún técnico que conociera del área?
> R. No, yo preparé el plano para que fueran al CRIM.
> P. Okey. ¿Que lo que aparece en la, en el catastro digital del CRIM es producción suya, una vez contratado?
> R. De, de la información mía.
> P. ¿No es un récord histórico de esa finca, es lo que usted le llevó?
> R. Es correcto[34].
> […]

Más adelante, el testigo continuó manifestando lo siguiente durante el contrainterrogatorio:

> P. Ese plano también dice, deje ver dónde es que dice, "Mensura y rectificación", ¿correcto?
> R. Si.
> P. ¿Cuándo usted hizo esa rectificación?
> R. **Bueno, al medir y ver que no daba exactamente las 19, hay que hacer el proceso de rectificación**.
> P. **¿Y cuando usted citó a los colindantes para buscar la conformidad de la colindancia?**
> R. No.
> P. ¿No lo hizo?
> R. **No lo hice**.

---

[33] Apéndice del recurso de *Apelación,* pág. 193.
[34] Véase transcripción de la prueba oral, págs. 131-133.

P. ¿No habló con ningún vecino?
R. No.
P. ¿No los citó?
R. No.
[...] (Énfasis nuestro)[35].

Es necesario enfatizar que la compraventa de las dos fincas ocurrida entre la familia Besosa y la parte apelada fue por precio alzado. Ante ello, el Tribunal Supremo afrontó el asunto de la compra por precio alzado y establece que se ha configurado como aquella en que el comprador se obliga a pagar determinada cantidad de dinero por toda la cabida de un bien inmueble que se encuentre dentro de unos linderos ya establecidos en el contrato[36]. Por lo tanto, **los linderos y los puntos cobran importancia ya que definen e individualizan la finca en cuestión**. Pero más importante aún, el Tribunal Supremo puntualiza sobre la intención de las partes al otorgar un contrato de compraventa de un inmueble por precio alzado:

> [S]i la compraventa de un inmueble se hace por precio alzado, el vendedor entregará todo lo que comprenda entre los linderos, aun cuando exceda la cabida o el número expresado en el contrato. *Conforme ello, cuando estamos ante una venta a precio alzado, lo importante es determinar cuáles eran los linderos establecidos por las partes al momento de suscribir el contrato de compraventa.* (Itálicas en el original)[37].

Por su parte, en el caso *Ruidíaz v. Salas*, se destaca que "[e]n la adquisición de un bien inmueble por un precio cierto, [es decir, precio alzado,] es menester ejercer cierto grado razonable de diligencia en el acto de comprar"[38]. También, abonan a que los compradores de un bien inmueble por precio alzado, antes de perfeccionar el contrato de compraventa, pueden practicar una mensura del inmueble para cerciorarse de la cabida. Al hacer la mención de la cabida de manera puramente informativa, no procede

---

[35] Véase transcripción de la prueba oral, págs. 138-139.
[36] *Rodríguez v. Pérez*, 164 DPR 368, 376-377 (2005).
[37] *Íd.*
[38] *Ruidíaz v. Salas*, 103 DPR 922, 925 (1975).

la rectificación del precio ni reclamación alguna de devolución por parte de los vendedores[39].

Para resolver de manera adecuada el presente recurso siempre debemos ceñirnos a la norma doctrinal esbozada con anterioridad en circunstancias de venta de inmuebles por precio alzado cuando media una discrepancia en la cabida de la finca, según descrita en el contrato de venta, respecto a las constancias del Registro de la Propiedad. La jurisprudencia ha sido clara sobre el particular.

Por ende, procedamos a examinar las diligencias de la parte apelada. Particularmente, luego de la escritura de compraventa número seis (6) otorgada el 15 de mayo de 2013. Así pues, la parte apelada contrató al Ing. Luis G. Rodríguez Fernández para atemperar las alegadas discrepancias entre lo que surge de los mapas catastrales y los planos levantados por el agrimensor René Guerra Menéndez y de la propia escritura de compraventa[40]. En el 2014, el Ing. Luis G. Rodríguez Fernández preparó un nuevo plano y sobre ello testificó lo siguiente durante el juicio en su fondo[41]:

> P. Testigo, usted conoce ese plano, ¿verdad?
> R. Sí, es correcto.
> P. ¿Por razón de?
> R. Lo preparé.
> P. Usted lo preparó. ¿Qué título usted le puso a ese plano?
> R. Plano de Mensura de Predio y Terrenos Propiedad de Gilberto Alvarado Díaz.
> P Aja. ¿Y qué más?
> R. "Localizado en la Carretera 114, kilómetro 10.5 Interior en el Barrio Sabana Eneas de San Germán".
> P. Le pregunto testigo, ya que usted lo preparó, ¿por qué ese plano en ningún lado dice que es la finca 865?

---

[39] *Rosa Valentín v. Vázquez Lozada*, 103 DPR 796, 812 (1975).
[40] Según surge del expediente ante nos, antes de otorgarse la escritura de compraventa, la familia Besosa contrató al agrimensor René Guerra Menéndez, quien en el 2011 levantó un plano, cuya hoja denominada 4 de 6 aparece la finca 865 identificada como Parcela 8. Posteriormente, el agrimensor René Guerra Menéndez hizo una revisión del plano en los meses de marzo y abril de 2013. En la hoja denominada 2 de 6 aparece la finca 865 identificada como Parcela 8. Así las cosas, la parte apelada contrató al ingeniero y abogado Luis G. Rodríguez Fernández en junio de 2014 para hacer una mensura de la finca y verificar que físicamente el área en sitio correspondiera a lo indicado en la escritura de compraventa, éste levantó un plano sobre la finca 865 y concluyó que la finca 865 ubica en un lugar distinto al que la ubicó el agrimensor René Guerra Menéndez.
[41] Véase transcripción de la prueba oral, págs. 125-131.

R. En ese momento no, no entendí que fuera pertinente para él, para el plano.

P. ¿Para usted como ingeniero, como agrimensor, identificar el sujeto no fue, no utiliza el número de finca?

R. En ocasiones, dependido si tengo la, el... (ininteligible).

P. ¿Cómo usted identificó este?

R. ¿La propiedad?

P. Ese ¿cómo usted identifica ese plano la propiedad?

R. Le pongo el predio y le pongo el número de catastro.

P. Okey. ¿Qué número de catastro...

R. Y la, la ubicación.

P. ... dice ahí?

R. Ese es el número de catastro que tenía, que era parte de la propiedad completa.

P. Okey. O sea, ¿que ese número de catastro no es de esa finca nada más?

R. Es correcto.

P. ¿Qué fincas estaban bajo ese número de catastro?

R. Específicamente no me acuerdo, pero eran varias de la Autoridad de Tierras.

P. ¿De la Autoridad de Tierras?

R. Si, las de las colin... las que están colindando.

P. ¿Y estaban con el número de catastro del comprador?

R. No.

P. ¿**Y por qué usted usa el número de propiedad de una propiedad de otra persona que no lo contrató?**

R. Bueno, porque el propósito de mi trabajo fue precisamente, ponerlo a nombre de él y ponerle el número de catastro a nombre de él.

P. Pero, ¿si la Autoridad no se le vendió, por qué estaba el número de catastro a nombre de Tierras?

R. Nosotros estamos convencidos de que esa es la propiedad de él, no de la Autoridad de Tierras.

P. Pero es que él no le compró a la autoridad de Tierras, ¿por qué iba él a tener un número de catastro de la Autoridad de Tierra, si él le compró la, a una sucesión?

R. Yo uso la información que tengo ahí, aunque no sea correcta, pero para...

P. Okey.

R. ...radicar en OGPe ... Si me permite, puedo explicar. Para radicar en OGPe tengo que poner un número de catastro.

P. ¿Y ese número de catastro, quién se lo dio a usted?

R. Bueno, lo busqué de la información, no...

P. ¿Lo buscó en dónde?

R. Bueno, en los planos y demás.

P. ¿En qué plano usted buscó ese número?

R. Ahora mismo no se decirle específicamente. Eso fue hace nueve años, no me acuerdo del detalle, todos los detalles.

P. ¿**Usted no se acuerda de dónde sacó el número de catastro de esa propiedad a que le levantó un plano? ¿Ese es su testimonio el día de hoy?**

R. **Debe ser de las escrituras o algo así pero realmente, decirle a ciencia cierto no me acuerdo.**

P. ¿De dónde usted sacó las colindancias de esa finca?

R. De la escritura que me suplió el doctor Alvarado.

P. ¿Qué otra información usted buscó a la hora de levantar ese plano?

R. Bueno, visitamos el sitio y corroboramos la descripción versus la, el sitio como tal.

P. ¿Alguna otra fuente de información para usted hacerle el trabajo que le fue contratado por el demandante?

R. Bueno, posteriormente, vimos varios planos viejos del área

P. ¿Qué planos viejos del área usted vio?

R. Pues, está el de Russell & Company, estaba otro de, no me acuerdo específicamente. Verifiqué el de, el ingeniero, el del agrimensor, pero no cuadraba con la...

P. ¿Qué agrimensor?

R. Guerra.

P. ¿El de Guerra, un plano de Russell & Company, que más?

R. Los 'desto', los, fotografías de Google para comparar cómo era el área en ese sitio.

P. Fotografías de Google. ¿En la fotografía aparece dueños?

R. No.

P. ¿Aparecen puntos?

R. No, aparecen las siluetas.

P. ¿Aparecen colindancias?

R. No.

P. ¿Usted está refiriendo y diciéndole al Tribunal que buscó fotos aéreas del área?

R. Para localizar bien la propiedad, para ver dónde quedaba.

**P. ¿Si al momento de usted preparar ese plano en el 2014 lo que había disponible eran planos de Russell & Company y planos de Guerra, como usted llega a una figura geométrica distinta a cualquier otro plano que se haya presentado en este caso?**

**R. Esa figura cuadra específicamente con la descripción de la propiedad, tanto de sus, en todas sus colindancias.** (Énfasis nuestro).

Un examen de los documentos que nos ocupan, particularmente de la transcripción de la prueba oral, mueve nuestro criterio a concluir que el dictamen aquí impugnado no es cónsono con el derecho y la prueba presentada. A nuestro juicio, el foro primario transgredió los límites que el ordenamiento jurídico establece para probar la acción reivindicatoria. La *Sentencia* emitida por el foro primario no fue una adecuada con relación a la apreciación de la prueba documental y testifical sometida por los comparecientes y a la carga probatoria pertinente.

Además, la parte apelada no logró fundamentar con precisión su situación, cabida y linderos ni demostrar durante el juicio que el predio que reclama es aquel a que se refieren los documentos, títulos y demás medios de prueba sobre los cuales sustenta su petición. Por tanto, dado a que las determinaciones de hechos consignadas en el dictamen son inconsistentes con la prueba, procede revocar la *Sentencia* impugnada.

Concluimos que, aun reconociendo que los foros apelativos aceptamos como correctas las determinaciones de hechos de los foros primarios, al igual que su apreciación de los testigos y el valor probatorio de la prueba presentada en sala, esta deferencia obedece a que las tareas de adjudicar credibilidad y determinar lo que realmente ocurrió, depende en gran medida de la exposición del juez o la jueza a la prueba presentada. No obstante, la deferencia cede, cuando la totalidad de la evidencia analizada nos convence de que las conclusiones del TPI confligen con el balance más racional, justiciero y jurídico de toda la prueba recibida.

**IV.**

Por los fundamentos que anteceden, **revocamos** la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones